**Carl HALEY, Jr., Plaintiff-Respondent,**

v.

**METROPOLITAN LIFE INSURANCE COMPANY, a Corporation, Defendant,**

**Jackie Dentman, a Minor, by Ruth H. Dentman, Her Guardian Ad Litem, Cross-Claimant, Appellant.**

No. 32863.

St. Louis Court of Appeals.

Missouri.

Sept. 17, 1968.

Opinion Modified Oct. 24, 1968.

Henry D. Espy, St. Louis, for cross-claimant, appellant.

Fordyce, Mayne, Hartman, Renard & Stribling, St. Louis, for defendant.

Raymond Howard, Jr., St. Louis, for plaintiff-respondent.

DOERNER, Commissioner.

At the time of his death on August 8, 1965 Carl Haley, Sr., a resident of the City of St. Louis, was a federal employee covered in the amount of $6,000 by a group life insurance policy which the Metropolitan Life Insurance Company had issued to the United States Civil Service Commission pursuant to the Federal Employees Group Life Insurance Act, 5 U.S.C.A. § 8701 et seq. No beneficiary was named in the certificate issued to him. Carl Haley, Jr., concededly a legitimate son of the insured, demanded payment of the proceeds, as did cross-claimants Adele Long, Earl Lee, and Jackie Dentman, a minor, all of whom claimed to be children of the insured born out of wedlock. Carl Haley, Jr., hereafter called plaintiff, instituted this action against Metropolitan, which admitted its liability under the policy, pleaded the conflicting claims, and interpleaded the cross-claimants. Ruth H. Dentman, mother of Jackie Dentman, a minor, was appointed her guardian ad litem. Separate cross-claims were filed by the three cross-claimants in which each claimed a share of the proceeds as a natural child of the in-

sured. The validity of those claims was denied by the plaintiff.

Title 5 U.S.C.A. § 8705 provides in part that when an insured employee dies without having designated a beneficiary the proceeds shall be paid to the person or persons surviving him in the following order:

"Second, if there is no designated beneficiary, to the widow or widower of the employee.

"Third, if none of the above, to the child or children of the employee and descendants of deceased children by representation."

That statutory provision was also incorporated in the certificate issued to the insured.

Haley was not married at the time of his death, and there are no descendants of any child who predeceased him. Thus the issues which were contested below were two-fold, one of fact and the other of law: (1) whether one or more of the cross-claimants was a natural child of the insured; and (2), if so, whether he or she was a "child" of the insured within the meaning of that word as used in the foregoing statutory provision, and hence entitled to share in the proceeds of the insurance. Issue being thus joined, a trial was held, the case taken under submission, and counsel for each litigant was requested by the trial chancellor to prepare and submit findings of fact and conclusions of law. The transcript contains those submitted on behalf of plaintiff and those filed on behalf of Jackie Dentman. In his judgment and decree the chancellor adopted those of plaintiff, rejected the claims of all three cross-claimants, and ordered $250 of the fund paid to counsel for Metropolitan as their attorney's fee, $250 to former counsel of plaintiff pursuant to a stipulation previously filed, and the balance to plaintiff. Only Jackie Dentman has appealed, and the judgment has thus become final as to cross-claimants Adele Long and Earl Lee.

In her brief Jackie urges us to decide in her favor precisely the same issues raised below, namely, that she is a natural child of the insured, and as such entitled to a share of the fund. So far as the factual issue, it is pertinent to point out that in a case of this nature, "* * * while we give due deference to the findings of the trial chancellor, we cannot escape the duty and responsibility placed upon us to arrive at our own conclusions as to the weight and value of the evidence and determine the facts accordingly. * * *" Cruwell v. Vaughn, Mo., 353 S.W.2d 616, 624; Ferguson v. Kindle, Mo., 396 S.W.2d 626, 629. That would seem to be particularly true where, as in this case, the findings of fact submitted by plaintiff and adopted by the court are replete with numerous findings which are wholly unsupported by the evidence. For example: it is stated therein that the evidence showed that Earl Lee was born in the wedlock of his mother and one Howard Lee, and that his birth certificate, signed and certified by his mother and introduced in evidence, showed that he was the son of Howard Lee. There is not a shred of evidence in the record that Earl Lee was born in wedlock to Howard Lee and his wife; and no birth certificate of Earl Lee was ever referred to, much less introduced in evidence. Another example: It is stated in the findings that "* * * Earl Lee has been convicted of a felony; Jackie Dentman's mother admitted adultery; and Adell (sic) Long has three illegitimate children of her own." Again, there is not a scintilla of evidence in the record that Earl Lee was convicted of a felony; Mrs. Dentman testified that she cohabitated with Carl Haley, Sr., the insured, and that he was the father of Jackie, but both she and the insured were not married at the time and while their cohabitation may have been immoral it was not adulterous; and while there was a reference in plaintiff's testimony to Adele Long having two children, there is absolutely no support in the record for the finding that they were illegitimate.

After a careful review of all of the evidence we have concluded that the weight of the evidence is strongly against

the finding of the trial chancellor upon the factual issue, and we find that Jackie Dentman is the natural daughter of Carl Haley, Sr., the insured. The evidence of Jackie showed that Mrs. Dentman, her mother, and Carl Haley, Sr., began to live together in 1956 and that Jackie was born on May 18, 1957; that while Mrs. Dentman was pregnant Haley told his·cousin, Mrs. Cleo Gratz, that Mrs. Dentman was carrying his child; that Haley took Mrs. Dentman to the hospital during the time she was receiving pre-natal care, took her to the hospital for her confinement, came to the hospital to see Jackie after she was born, and brought Mrs. Dentman and Jackie back to his home in St. Louis where they continued to reside until Haley and Mrs. Dentman separated in 1959. Mrs. Gratz, and Charles E. White, a nephew of Haley's, as well as James Mantia and Robert Pope, friends of Haley's, all testified that Haley had repeatedly stated to them on various occasions that Jackie was his daughter. Mrs. Gratz related that Jackie attended family gatherings; that Jackie has always been regarded and treated as a member of the family; and that she has invited Jackie to her home and given her presents since Haley's death. White testified that Haley brought Jackie to his mother's home and told him he bought Jackie's clothes and gave her money for her tuition at a Catholic school. Mrs. Dentman testified that Haley was Jackie's father, and that after she and Haley separated in 1959, Haley until the time of his death contributed $10 or $15 a week for the support of Jackie and paid her tuition at St. Nicholas School.

Plaintiff relied ·primarily on Jackie's birth certificate, bearing Mrs. Dentman's signature, in which her former husband, Johnnie Dentman, was named as Jackie's father. However, Mrs. Dentman denied that she had told the attending physician that Johnnie Dentman was Jackie's father and insisted she had told him Haley was the father. Her uncontroverted testimony was that she and Dentman had separated in 1948 and had not thereafter had inter-

course; that Dentman had been in the Army in Japan for seven and a half years before Jackie was born in 1957; and that they were divorced in 1955. A copy of that decree was introduced in evidence. Her explanation for the recording of Dentman as Jackie's father was that she had had six children by Dentman before 1948, some of whom were born at the same hospital, and that whoever filled in the birth certificate may have consulted the records of such births for the information recorded as to parentage.

Since the Dentmans were unquestionably divorced in 1955 and were not husband and wife at the time of Jackie's birth, the certificate was not prima facie evidence of the facts stated therein. § 193.170, RSMo 1959, V.A.M.S. And in reaching our conclusion that the insured was Jackie's father we placed our greatest reliance on the testimony of the disinterested relatives concerning Haley's declarations that Jackie was his daughter and was so regarded and treated by their family since her birth. While plaintiff questions the admissibility of such testimony, Haley's declarations concerned matters of family pedigree and reputation, were made ante litem motem, and the declarant was dead, and they were therefore admissible under a well-recognized exception to the hearsay rule. Rauch v. Metz, Mo., In Banc, 212 S. W. 357; Osmak v. American Car & Foundry Co., 328 Mo. 159, 40 S.W.2d 714, 77 A.L.R. 722; In re Imboden's Estate (Imboden v. Imboden's Estate), 111 Mo.App. 220, 86 S.W. 263.

Although the trial chancellor found that Jackie was not the natural child of Carl Haley, Sr., which finding constituted a bar to her claim, he went on to rule as a matter of law that the word "child" as used in the Federal Group Life Insurance policy did not include a child of the insured born out of wedlock. In support of that conclusion decisions interpreting the statutes of descent and distribution, crimes, and other enactments of Missouri and Ohio were cited. Martin v. Claxton, 308

Mo. 314, 274 S.W. 77; Baker v. Stucker, 213 Mo.App. 245, 248 S.W. 1003; Creisar v. State, 97 Ohio St. 16, 119 N.E. 128; Aetna Life Insurance Co., Hartford, Conn. v. McMillan (D.C., N.D.Ohio), 171 F.Supp. 111. What we are asked to construe, however, is not the meaning of a term used in a Missouri statute, but a word employed in a federal statute and incorporated in the provisions of the certificate of insurance issued to the insured. And as said in State of Missouri ex rel. Atkins v. Missouri State Board of Accountancy, Mo.App., 351 S.W.2d 483, 485: "* * * In the construction of a Federal Statute it has long been the rule in Missouri that '* * * the state courts will follow and are bound by the decisions of the federal courts.' McElvain v. St. Louis & S. F. R. Co., 151 Mo.App. 126, 1910, 131 S.W. 736, 743(12)." And see Stone v. New York, C. & St. L. R. Co., Mo., 249 S.W.2d 442, reversed on other grounds, 344 U.S. 407, 73 S.Ct. 358, 97 L.Ed. 441; Urie v. Thompson, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282, 11 A.L. R.2d 252.

The only pertinent cases involving the Federal Employees Group Life Insurance Act which have been cited by counsel or which our own research has disclosed are Brantley v. Skeens, 105 U.S.App.D.C. 246, 266 F.2d 447 (1959); Grove v. Metropolitan Life Insurance Co., 4 Cir., 271 F.2d 918 (1959); Varker v. Metropolitan Life Insurance Co., D.C., M.D.N.C., 184 F. Supp. 159 (1960); Metropolitan Life Insurance Co. v. Thompson, 3 Cir., 368 F. 2d 791 (1966). While in each of those cases the natural child or children involved prevailed, the bases upon which such recoveries were allowed are by no means uniform. Thus in Brantley, supra, the court held that what is encompassed in the term "child" under the Act is to be determined under the law of the jurisdiction in which the claim arose, there the District of Columbia. It pointed out that a statute of inheritance of the District provided that an illegitimate child was capable of inheriting from his mother in like manner as if born in lawful wedlock, and held that the chil-

dren born to the female insured as the result of a bigamous marriage were entitled to share proportionately with the insured's legitimate son. In Grove, supra, the contest for the proceeds of the insurance was between the father and the natural daughter of the insured, a resident of Virginia. In its opinion the court stated (271 F.2d 919, 920) that, "The parties agree that whether Margaret (the daughter) is entitled to the proceeds under Virginia law depends upon whether she is a legitimate child according to the Virginia statute, § 64–7 of the Code of Virginia, 1950, which provides: 'The issue of marriages deemed null in law * * shall nevertheless be legitimate.' * * *" The court cited various Virginia decisions holding that that statute legitimized children born of a marriage which was a nullity, and that she was therefore entitled to the proceeds of the policy under the Act as a child of the insured. In Varker, supra, the court also applied the law of the insured's domicile, and held that a natural child of the insured's second and bigamous marriage was legitimized by a North Carolina statute and therefore entitled to the proceeds of the insurance.

The latest, and what we consider to be the best reasoned, federal decision is Metropolitan Life Insurance Co. v. Thompson, supra. There the claimants to the insurance proceeds were the mother and the natural child of the insured, who had been a resident of the State of New York. The District Court reasoned that the law of that state was controlling and denied recovery to the child because New York law denied to illegitimates the status of children (250 F.Supp. 476). In reversing that decision and awarding the insurance proceeds to the natural child the Court of Appeals held (368 F.2d 792), "* * * that, absent some other statutory reference, the meaning of terms in a federal statute is a federal question * * *" and stated that (loc.cit. 792–793) "* * * According to ordinary usage a child is still a child even though his natural father may have failed to meet the requisite standards of a lawful marriage in a particular state. Further, in

this legislation Congress had indicated no intent to differentiate between legitimate and illegitimate children. * * *" The court pointed out that if the meaning of the word "child" in the Act was determined by local law (l. c. 793) "* * * variations among jurisdictions as to the definition and status of illegitimate children would destroy federal uniformity and give rise in each case to the preliminary issue of which jurisdiction's law to choose. These difficulties are all avoided by construing the denominated categories of the Act uniformly in accordance with their ordinary meanings. * * *"

In addition to its reliance upon the ordinary meaning of the word "child," the court cited the legislative history of the Act and the President's message to Congress as a basis for its opinion that the purpose of the bill was geared toward assuring support for dependents rather than passing on accumulated wealth to relatives according to local laws of inheritance. That purpose, it stated, was illustrated by the fact that the insurance is term insurance and not ordinary life insurance. Emphasizing the distinction between a federal statute involving the passing on of accumulated wealth, when a local law of inheritance would apply, and one to provide against loss of support, the court cited DeSylva v. Ballentine, 351 U.S. 570, 76 S.Ct. 974, 100 L.Ed. 1415 (1956), which involved the correct interpretation of the word "children" under § 24 of the Copyright Act, 17 U.S.C.A. That Act provided for a second 28-year copyright after the expiration of the original 28-year term, and § 24 provided that a deceased author's children, among others, may renew the copyright. The Supreme Court held that an illegitimate child could share in the renewal rights because under California inheritance law, which was there deemed the relevant source of rights under the Copyright Act, an illegitimate was included within the term "children." In holding that it was not required to follow DeSylva and apply the New York law of inheritance, under which an illegitimate was nulius filius for purposes of inheritance from his father's estate, the court stated (368 F.2d 791, 794):

"* * * however appropriate it may be to follow state laws of inheritance where the problem is essentially one of passing accumulated wealth to succeeding generations, we think it reasonable to infer here that Congress intended the distribution of proceeds of term insurance to provide a substitute source of income for that lost by the insured's death. Therefore, the *DeSylva* case which involved a different Act with different purposes does not control the resolution of the present problem of statutory construction."

Certiorari was applied for by the appellee in Metropolitan Life Insurance Co. v. Thompson, but was denied. 388 U.S. 914, 87 S.Ct. 2127, 18 L.Ed.2d 1355. In view of the holding of the Court of Appeals of the non-applicability of local law in construing the word "child," as was done in the DeSylva case, and the fact that the Supreme Court of the United States had never ruled on the meaning of the word "child" contained in the Federal Employees Group Life Insurance Act, as the Court of Appeals took pains to point out, it is reasonable to assume that the Supreme Court would have granted certiorari had it believed that the conclusions reached by the Court of Appeals were erroneous. Our opinion in that regard is bolstered by the conclusions reached in two opinions handed down by the Supreme Court of the United States on May 20, 1968, Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436, and Glona v. American Guarantee & Liability Insurance Co., 391 U.S. 73, 88 S.Ct. 1515, 20 L.Ed.2d 441. Both involved the wrongful death statute of Louisiana which provided that the surviving spouse and child or children of the deceased were preferentially entitled to a right of recovery, and that the surviving father or mother had the next right of action if the deceased left no spouse or child surviving. In Levy the action was brought on behalf

of five illegitimate children for the death of their mother. In Glona the suit was by the mother of an illegitimate son. The state courts of Louisiana construed the terms "child or children" to mean only a legitimate child or children, except when a parent had acknowledged the child as his pursuant to a statutory procedure. The Supreme Court reversed, and held that the classification as made by Louisiana discriminated against illegitimate children and was unconstitutional in that it was repugnant to the equal protection clause of the Fourteenth Amendment to the Federal Constitution which provides that, "No State shall * * * 'deny to any person within its jurisdiction the equal protection of the laws.'" In essence, then, those cases must be regarded as holding that an illegitimate child is a "person" within the meaning of that word as used in the Fourteenth Amendment.

A slightly earlier and more analogous case is Armijo, Administratrix of the Estate of Tomas Telles v. Wesselius, Wash., 440 P.2d 471, decided by the Supreme Court of that state en banc on May 2, 1968. The question there presented was whether the words "child or children" in the wrongful death statute of Washington should be construed to permit an illegitimate son to recover for the wrongful death of his mother. In permitting recovery the court acknowledged that its decision was contrary to a majority of the cases in other jurisdictions, but observed (loc.cit. 473) that it was clearly in accord "with a decisive current trend in legislative and decisional law which ignores legitimacy when creating or applying statutes designed to benefit children. * * *" Citing cases, including Metropolitan Life Insurance Co. v. Thompson, supra, it continued:

"The reason for this trend is clear. Society is becoming progressively more aware that children deserve proper care, comfort, and protection even if they are illegitimate. The burden of illegitimacy in purely social relationships should be enough, without society adding unnecessarily to the burden with legal implica-

tions having to do with the care, health, and welfare of children. As stated in In re Woodward's Estate, supra, 230 Cal. App.2d [113] at 118, 40 Cal.Rptr. [781] at 784: [12 A.L.R.3d 1134]

"Modern society shrinks from application of the Old Testament (Exodus 20) commandment 'visiting the iniquity of the fathers upon the children. * * *' Rather we accept the more humanitarian view stated by Judge Leon Yankwich, that 'there are no illegitimate children, only illegitimate parents.'"

In the light of these cases, and particularly that of Metropolitan Life Insurance Co. v. Thompson, supra, we hold that a child of the insured born out of wedlock is a "child" within the meaning of that term as used in § 8705 of the Federal Employees Group Life Insurance Act, 5 U.S. C.A., and as such is entitled to share proportionately with the insured's legitimate child or children in the proceeds of the insurance issued under that Act.

Accordingly, the judgment is reversed and the cause remanded with directions to enter a judgment and decree directing that the fund of $6,000 in the registry of the court be distributed as follows: $250 to Fordyce, Mayne, Hartman, Renard & Stribling, counsel for defendant Metropolitan Life Insurance Company; $2875 to a duly appointed guardian of the person and estate of cross-claimant Jackie Dentman; $250 to Ellsworth W. Ginsberg and Marvin L. Levinson, former counsel for plaintiff Carl Haley, Jr., pursuant to stipulation filed; and the remaining $2625 to plaintiff Carl Haley, Jr.

PER CURIAM:

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court. Accordingly, judgment reversed and cause remanded with directions.

ANDERSON, P. J., and RUDDY and WOLFE, JJ., concur.