**Mary E. BROWN, on behalf of herself and all others similarly situated; Liberia Johnson, Appellees,**

v.

**Frances E. PORCHER, in her official capacity as Claims Adjudicator of the South Carolina Employment Security Commission; H. C. Sloan, in his official capacity as Appeals Referee of the South Carolina Employment Security Commission; C. Len Harper, in his official capacity as Chairman of the South Carolina Employment Security Commission; Cecil Sandifer, in his official capacity as Vice-Chairman of the South Carolina Employment Security Commission; Frank E. Baldwin, Jr., in his official capacity as Commissioner of the South Carolina Employment Security Commission, Appellants.**

**No. 81–1077.**

United States Court of Appeals, Fourth Circuit.

Argued June 3, 1981.

Decided Oct. 6, 1981.

Rehearing and Rehearing En Banc Denied Jan. 22, 1982.

David C. Eckstrom, Asst. Atty. Gen., Columbia, S. C. (Daniel R. McLeod, Atty. Gen., C. Tolbert Goolsby, Jr., Deputy Atty. Gen.; William H. Griffin, Gen. Counsel, Columbia, S. C., on brief), for appellants.

Thomas J. Rubillo, Neighborhood Legal Assistance Program, Inc., Pawleys Island, S. C. (Armand Derfner, Jill A. Hanken, VA Poverty Law Center, Charleston, S. C., on brief), for appellees.

(Thompson, Mann & Hutson, Greenville, S. C., on brief), for amicus curiae.

Women's Rights Project and the Reproductive Freedom Project of the American Civil Liberties Union Foundation, American Civil Liberties Union of South Carolina, National Center on Women and Family Law, Inc., Women's Legal Defense Fund, amici curiae.

International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America-UAW, United Steelworkers of America, AFL–CIO, National Employment Law Project, National Center on Women and Family Law, amici curiae.

Before BUTZNER, and ERVIN, Circuit Judges, and W. EARL BRITT, United States District Judge for the Eastern District of North Carolina, sitting by designation.

BUTZNER, Circuit Judge:

Title 26 U.S.C. § 3304(a)(12) provides "no person shall be denied [unemployment] compensation under ... State law solely on the basis of pregnancy or termination of pregnancy." The principal issue in this appeal is whether this statute prohibits the South Carolina Employment Security Commission from denying women, who are available and able to work, unemployment compensation solely because they left work on account of pregnancy.[1] The district court held that the Commission's practices conflicted with § 3304(a)(12) and awarded injunctive and monetary relief to an appropriate class. We affirm this judgment with one exception: on remand the court should modify the computation of individual awards as directed in Part III of this opinion.

I

The district court's opinion, reported at 502 F.Supp. 946 (D.S.C.1980), recounts in detail the facts pertaining to this action. In summary, the record discloses that Mary E. Brown and Liberia Johnson, appellees, each left their respective employment due to the physical discomfort and illnesses occasioned by their pregnancies. After giving birth to their children, Brown and Johnson sought to return to their former jobs, but they were informed that the positions were no longer available. Each then filed a claim with the Commission for unemployment compensation.

The Commission denied both claims on the ground that the applicants had voluntarily quit their former jobs for personal reasons not constituting good cause. Section 41–35–120(1) of the South Carolina Code provides that a claimant shall be ineligible for benefits "[i]f the Commission finds that he has left voluntarily without good cause his most recent work ..." Although the South Carolina statute does not mention pregnancy, the Commission has construed it to disqualify any claimant who voluntarily left her most recent employment because of pregnancy.[2]

II

■ We agree with the district court's conclusion that 26 U.S.C. § 3304(a)(12) pro-

---

1. South Carolina, like other states, requires unemployment claimants to be available and able to work before being eligible to receive unemployment compensation. The plaintiffs do not challenge this requirement, and they do not claim that pregnant women unable to work should be given unemployment compensation.

2. The Commission, however, awards compensation to employees whose employers grant maternity leave and to those employees who are discharged because of pregnancy. These distinctions are the basis of a claim that the Commission's practice denied the complainants equal protection of the laws. Quite properly, the district court found it unnecessary to address this constitutional issue in view of the disposition of the case on statutory grounds.

hibits the challenged South Carolina practice. Congress has required the states to comply with a limited number of "fundamental standards" in order to receive the advantages of federal approval.[3] Because § 3304(a)(12) is a fundamental standard, the only issue is whether the challenged practice violates this statute.

Section 3304(a)(12) was enacted in the wake of *Turner v. Department of Employment Security*, 423 U.S. 44, 96 S.Ct. 249, 46 L.Ed.2d 181 (1975). There the Court overturned, on constitutional grounds, a presumption that pregnant women could not work and therefore were ineligible for unemployment compensation. *Turner*, however, did not address the issue presented by this case.

The Commission argues that § 3304(a)(12) was intended only to eliminate the somewhat shorter presumptive periods of disqualification that some states continued to impose after *Turner* and to "prohibit states from creating a special category for pregnancy-related claims, and then denying benefits to those claimants thereby basing the denial on the fact of pregnancy alone."[4] The Commission points out that it treats pregnant women like any employee who quits a job because of ill health. Consequently, the Commission asserts, its practice does not conflict with the federal statute.

We cannot accept the Commission's argument. As the district court pointed out, § 3304(a)(12) is remedial in nature and should be broadly construed. *Tcherepnin v. Knight*, 389 U.S. 332, 336, 88 S.Ct. 548, 553, 19 L.Ed.2d 564 (1967). If Congress had intended, as the Commission argues, only to codify the *Turner* decision and take the additional step of barring discrimination on the basis of pregnancy, it could easily have drafted a statute reflecting those limited purposes. Instead, it broadly provided that "[n]o person shall be denied compensation under . . . state law solely on the basis of pregnancy or termination of pregnancy."

These words must be interpreted "in their ordinary everyday senses." *Hanover Bank v. Commissioner*, 369 U.S. 672, 687, 82 S.Ct. 1080, 1088, 8 L.Ed.2d 187 (1962). Regardless of how the Commission treats employees with other disabilities, the mandate of the statute is clear: the Commission cannot deny compensation "solely on the basis of pregnancy or termination of pregnancy." Because the statute is unambiguous, resort to legislative history is unwarranted. Sutherland, Statutes and Statutory Construction § 46.04 (4th ed. C. Sands 1973). It may not be amiss, however, to note that nothing in the scant legislative history indicates that Congress intended the statute to be read other than literally.

■ Contrary to an argument advanced by the Commission, the Secretary of Labor's certification of South Carolina's compensation law pursuant to 26 U.S.C. § 3304 is neither controlling nor entitled to great weight. As we have previously mentioned, § 41–35–120 of the South Carolina Code does not mention pregnancy. Consequently, it is not facially in conflict with federal law. The Secretary's certification in summary fashion purports to approve a number of states' "unemployment compensation laws." It makes no reference to the interpretation that the South Carolina Commission has placed on the state law.

■ For reasons adequately explained by the district court, 502 F.Supp. at 957 n.20, we find no error in its refusal to defer to the view expressed by the Department of Labor's Administrator, Unemployment Insurance Service. In a letter solicited during the course of this litigation, the administrator wrote that § 3304(a)(12) has been interpreted to do no more than prohibit discrimination on the basis of pregnancy. As the Supreme Court has recently noted, "[t]he amount of deference due an administrative agency's interpretation of a statute . . . 'will depend upon the thoroughness evident

---

**3.** In *Steward Machine Co. v. Davis*, 301 U.S. 548, 594, 57 S.Ct. 883, 894, 81 L.Ed. 1279 (1937), the Court pointed out that a state may not "depart from those standards which in the judgment of Congress are to be ranked as fun-

damental" if it is to participate in the federal-state program for unemployment compensation.

**4.** Appellants' brief at 21.

in its consideration, the validity of its reasoning, [and] its consistency with earlier and later pronouncements. . . .'" *St. Martin Evangelical Lutheran Church v. South Dakota*, 451 U.S. 772, 783, 101 S.Ct. 2142, 2148–49 n.13, 68 L.Ed.2d 612 (1981). Tested by these criteria, the letter is entitled to little weight. The administrator cites neither authority nor legislative history for the interpretation he espouses. He accepts the premise that pregnancy should be treated like any other illness without explaining how this premise can be reconciled with the exceptional treatment of pregnancy embodied in § 3304(a)(12).

We therefore conclude that the district court properly declared that the Commission's practices contravened § 3304(a)(12). We also conclude that the injunctive relief the court ordered to correct these practices is appropriate.

### III

The district court also ordered the Commission to make retroactive payments to claimants who have been denied compensation since January 1, 1978.[5] The Commission challenges the award as both inequitable and violative of the eleventh amendment.

The words "retroactive" and "retrospective" have been commonly used in several different contexts. It is therefore essential to understand the context in which the court ordered "retroactive" payments in this case. The court construed § 312(c) of the Unemployment Compensation Amendments of 1976, Pub.L.No. 94–566, 90 Stat. 2667, 2679 (1976), to make § 3304(a)(12) effective January 1, 1978. *See* 26 U.S.C. § 3304 note. No party challenges this interpretation of the Act. The court awarded payments only from the effective date of § 3304(a)(12). It did not apply the statute

retrospectively. Nor did the court depart from or overrule prior judicial decisions and apply a new principle retrospectively. For these reasons, cases dealing with retrospective application of statutes or innovative judicial decisions are inapposite.[6]

In short, the court enforced an Act of Congress in accordance with the date that Congress indicated it should become effective. Whether the court abused its discretion should be tested by the criteria formulated by Judge McGowan in *Rothstein v. Wyman*, 467 F.2d 226, 234 (2d Cir. 1972):

A federal court in this situation is called upon to perform two related functions. First, in wielding equity power, it must weigh competing claims and determine where a preponderance of the equities lies. Second, as an instrumentality of the United States, it must attempt to identify and effectuate the policies of the United States, as formulated by the Congress.

Subject to an adjustment, which we will subsequently discuss, the district court's award satisfies both aspects of the *Rothstein* test.

The nature of unemployment compensation creates strong equities in favor of the claimants. The Committee on Economic Security, which in 1935 recommended unemployment insurance compensation, described the program in these terms: "This should be a contractual right not dependent on any means test." *See California Department of Human Resources Development v. Java*, 402 U.S. 121, 131, 91 S.Ct. 1347, 1353, 28 L.Ed.2d 666 (1971) (quoting the committee's report).[7] South Carolina law reflects the committee's concept. To be eligible for compensation an insured worker must satisfy minimal time and wage requirements. *See, e. g.,* S.C.Code §§ 41–27–310 and 41–

---

**5.** The court directed the Commission to process the claims but stayed disbursement pending appeal.

**6.** The Commission's reliance on *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), therefore is misplaced. That case dealt with the propriety of applying a recent decision retrospectively to the great harm of a litigant who had followed a line of

decisions that, until overturned, had represented the law governing his case. *See* 404 U.S. at 107, 92 S.Ct. at 355.

**7.** Thus, although unemployment compensation redresses a pressing need in industrial societies, it is not welfare. Consequently, cases prohibiting the retroactive payments of welfare grants deal with quite different equitable considerations.

35–110. After an employee has worked long enough and has earned enough to become eligible for compensation, equitable principles of fair dealing support the conclusion that he or she should be entitled to payment in accordance with state and federal statutes governing the system.

We find no significant countervailing equities in favor of the Commission. Although the award may eventually be as large as several million dollars when all claims are processed, the compensation fund will not be rendered insolvent. Administrative costs will be defrayed by federal contributions. Additionally, apart from the fund's reserves, the Commission acknowledges that retroactive payments "could likely increase individual employers' rates of contribution because of the resulting changes to their individual accounts."[8] It therefore appears that in due course through the adjustment of individual accounts the Commission can, if it chooses to do so, recoup, on an actuarial basis, sums that are attributable to the awards. Moreover, since January 1, 1978, the Commission has received substantial benefits from the federal government which the law makes available only to states that comply with standards Congress deemed fundamental. These facts indicate that the award will inflict no irreparable harm on the Commission.

We also find no compelling equity in the Commission's reliance on the Secretary's certification of the South Carolina law. Certification enabled the Commission to receive the benefits that follow federal approval, but it did not purport to resolve every claimant's entitlement to compensation. Moreover, the Commission was not prejudiced by relying on the certification. It has not shown that its reliance caused it to forego permanently significant increases in employers' contributions.

With respect to the second part of the *Rothstein* test, there can be no doubt that the district court's order effectuates "the policies of the United States, as formulated by the Congress." Congress adopted § 3304(a)(12) as a fundamental standard to prohibit a state from denying compensation solely on the basis of pregnancy. Congress postponed the effective date of this mandate to enable the states to make any necessary changes in their laws. There is no provision in the Act, nor any suggestion in the legislative history, that indicates an intent to defer implementation of the statute beyond the effective date that Congress provided.

■ Applying the *Rothstein* test, we conclude that the equities favor the claimants and that the district court properly gave effect to congressional policy in ordering awards from the effective date of § 3304(a)(12). Not all claimants, however, now stand on equal footing. Those who have received welfare payments that would not have been available had they been receiving unemployment compensation should not be entitled to dual payments. For these claimants, the welfare payments have served as a substitute, at least in part, for the omitted compensation. Individual awards, therefore, should be reduced to this extent.

Finally, we must consider whether the award, though equitably justified, violates the bar of the eleventh amendment. In the context of the eleventh amendment, the Supreme Court has classified equitable remedies as retroactive or prospective depending on whether the remedy compensates for past delinquencies or mandates future compliance. In *Edelman v. Jordan*, 415 U.S. 651, 665, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974), the Court held that the eleventh amendment proscribes a retroactive award of welfare benefits which "must inevitably come from the general revenues" of a state. In this case, therefore, we must determine whether a retroactive award would be drawn from a general revenue fund of the type protected by the Court's decision in *Edelman.*

South Carolina's unemployment compensation fund is "a special fund . . . administered separate and apart from all public moneys or funds of the State." S.C.Code

---

**8.** Appellants' brief at 42.

§ 41–33–10. The money paid into the fund consists of employer contributions, federal funding, investment income, and other receipts. S.C.Code § 41–33–10. Unemployment compensation is "deemed to be due and payable . . . to the extent that moneys are available therefor to the credit of the unemployment compensation fund and neither the State nor the Commission shall be liable for any amount in excess of such sums." S.C.Code § 41–27–630.

District courts considering the question have concluded that retroactive remedial relief may lie against state unemployment compensation funds when the funds are special and the state has expressly protected general revenues from liability. *See Bowen v. Hackett*, 387 F.Supp. 1212 (D.R.I. 1975); *accord, Bigelow v. Mesc*, [1975–1979 Transfer Binder] Unempl Ins Rep (CCH) ¶ 21,520 (E.D. Mich., May 15, 1978); *Black v. Caldwell*, [1975–1979 Transfer Binder] Unempl Ins Rep (CCH) ¶ 21,485 (N.D.Ga., Jan 6, 1976). Although no court of appeals has decided whether insulated, separately financed state unemployment compensation funds are embraced by the eleventh amendment, two courts have acknowledged the validity of the analysis undergirding *Bowen. See, e. g., Fitzpatrick v. Bitzer*, 519 F.2d 559, 564–65 (2d Cir. 1975), *aff'd in part and rev'd in part*, 427 U.S. 445, 459–60, 96 S.Ct. 2666, 2673, 49 L.Ed.2d 614 (1976) (Stevens, J., concurring); *Hutchison v. Lake Oswego School District*, 519 F.2d 961, 966 (9th Cir. 1975). Accordingly, we agree with the district court's conclusion that a retroactive award against the South Carolina Employment Security Commission does not violate the eleventh amendment.

The judgment of the district court is affirmed, subject to modification of individual awards, and the case is remanded for further proceedings consistent with this opinion.