Linda WIMBERLY, Respondent,

v.

The **LABOR AND INDUSTRIAL RELA-
TIONS COMMISSION OF MISSOURI,**
and The Division of Employment Se-
curity of the State of Missouri, and J.C.
Penney Co., Inc., Appellants.

No. 66083.

Supreme Court of Missouri,
En Banc.

April 2, 1985.

Opinion Concurring in Result Modified
April 30, 1985.
Rehearing Denied April 30, 1985.

Sharon A. Willis, Kansas City, Rick V. Morris, Catherine J. Barrie, Jefferson City, for appellants.

Julie Levin, Legal Aid of Western Missouri, Kansas City, for respondent.

WELLIVER, Judge.

Respondent initiated this proceeding in the Circuit Court of Jackson County after the Missouri Labor and Industrial Relations Commission denied her claim for unemployment compensation. The circuit court reversed and the Missouri Court of Appeals, Western District, affirmed the circuit court's judgment. We ordered the cause transferred to determine whether 26 U.S.C. § 3304(a)(12) (1982) of the Federal Unemployment Tax Act requires states, as a predicate to receipt of federal assistance, to provide unemployment benefits to otherwise eligible claimants who left their employment due to pregnancy. We reverse.

The parties accept the Commission's findings of fact. Respondent had been employed by the J.C. Penney Company, Inc., as a cashier and sales clerk for approximately three years. In late August 1980, respondent, then approximately seven months pregnant, requested a leave of absence, citing her pregnancy as the reason. In accordance with its established policy, the employer granted respondent a "leave" without a guarantee of reinstatement, i.e., respondent would be rehired only if a position was available. Respondent's child was born on November 5, 1980. When, on December 1, 1980, respondent notified the employer of her desire to return to work, she was informed that there were no positions open.

Respondent filed a claim for unemployment compensation benefits on December 7, 1980. A deputy for the Division of Employment Security denied the claim on the ground that respondent was disqualified under § 288.050.1(1), RSMo 1978. The deputy determined that respondent "quit because of pregnancy" and, therefore, had left work voluntarily without good cause attributable to her work or her employer. Respondent appealed the decision to the Division's Appeals Tribunal. After a full evidentiary hearing at which respondent appeared with counsel, the Appeals Tribunal issued findings of fact and conclusions of law and affirmed the deputy's decision. The Tribunal concluded:

> Although the claimant did have a good reason for leaving her employment, it is found that that reason was in no way attributable to her work or to her employer. Accordingly, it is found that the claimant quit her job voluntarily on August 23, 1980, without good cause attributable to her work or to her employer.

The Industrial and Labor and Industrial Relations Commission denied respondent's petition for review, and thereby adopted the Tribunal's findings and conclusions. § 288.200.1, RSMo 1978. Respondent then filed a petition for review in the circuit court and that court reversed the Commission's decision. The court accepted the agency's findings of fact and acknowledged that Missouri courts had construed § 288.050.1(1) to disallow unemployment compensation benefits when the claimant left work on a maternity leave without a guarantee of reemployment at the end of the leave period. It concluded, however, that the existing law in Missouri was contrary to 26 U.S.C. § 3304(a)(12) (1982), as construed in *Brown v. Porcher*, 660 F.2d 1001 (4th Cir.1981), *cert. denied*, 459 U.S. 1150, 103 S.Ct. 796, 74 L.Ed.2d 1000 (1983). Section 3304(a)(12), one of the federal minimum standards with which states must comply if their unemployment insurance scheme is to qualify for federal assistance, provides that "no person shall be denied compensation under [a state unemployment compensation] law solely on the basis of pregnancy or termination of pregnancy." Relying on *Brown v. Porcher*, the circuit court held that § 3304(a)(12) "banned the use of pregnancy or its termination as an

excuse for denying benefits to otherwise eligible women," and accordingly, the court reversed the Commission's decision and remanded for entry of an award.

The Western District affirmed the court's judgment. Though the court expressed "reservations concerning the soundness of the ruling in *Brown*," slip op. at 14, it felt constrained to follow the Fourth Circuit's interpretation of § 3304(a)(12), stating:

> In cases dealing with the construction of federal statutes, this court is bound by and must follow decisions of federal courts. [*Buffalow*] *v. Bull*, 619 S.W.2d 913, 919 (Mo.App.1981), citing *Haley v. Metropolitan Life Insurance Company*, 434 S.W.2d 7, 11 (Mo.App.1968). From this rule, it follows that this court must affirm, due to the ruling in *Brown v. Porcher*, the judgment of the circuit court herein.

Slip op. at 13.

## I

The legislature enacted the Missouri Employment Security Law to provide a partial wage replacement for workers left unemployed through no fault of their own. *O'Dell v. Division of Employment Security*, 376 S.W.2d 137 (Mo.1964). A claimant must satisfy two general requirements to qualify for unemployment benefits. First, he or she must be "able to work and available for work." § 288.040.-1(2), RSMo Supp.1984. Second, the claimant must be free from disqualification. Section 288.050.1(1) disqualifies a claimant if he "left his work voluntarily without good cause attributable to his work or to his employer."[1] Missouri courts have interpreted this provision to disqualify claimants who quit[2] their job on account of pregnancy or personal illness unrelated to the employment. *See Fifer v. Missouri Division of Employment Security*, 665 S.W.2d 81 (Mo.App.1984); *Duffy v. Labor and Industrial Relations Commission*, 556 S.W.2d 195 (Mo.App.1977); *Bussmann Manufacturing Co. v. Industrial Commission*, 335 S.W.2d 456 (Mo.App.1960); *Bussmann Manufacturing Co. v. Industrial Commission*, 327 S.W.2d 487 (Mo.App.1959). *See also Division of Employment Security v. Labor and Industrial Relations Commission*, 617 S.W.2d 620 (Mo.App.1981); *Neeley v. Industrial Commission*, 379 S.W.2d 201 (Mo.App.1964); *LaPlante v. Industrial Commission*, 367 S.W.2d 24 (Mo.App.1963). These decisions persuasively demonstrate that the wording of § 288.050.1(1) evidences a manifest legislative desire to disqualify claimants who, like respondent, left work for reasons that, while perhaps legitimate and necessary from a personal standpoint, were not causally connected to the claimant's work or employer.

The question before us in this proceeding is whether the state can deny unemployment benefits to otherwise eligible claimants who left their employment due to pregnancy and still qualify for certain forms of federal assistance. Understanding this question requires a brief description of this nation's system of unemployment compensation. The system operates as a cooperative venture between the federal government and the various states. The Federal Unemployment Tax Act, 26 U.S.C. §§ 3301 et seq. (1982), imposes a federal payroll tax on wages paid by covered employers. The Act, however, authorizes a credit against a substantial part of the federal tax liability to employers who contribute to a state unemployment compensation fund approved by the Secretary of Labor. Federally-approved state programs also are entitled to federal grants to

---

1. Under § 288.050.1, a claimant found to be disqualified is not entitled to benefits "until after he has earned wages equal to ten times his weekly benefit amount."

2. A leave of absence without a guarantee of reinstatement has been treated as a "quit" when the employer refuses to rehire the employee at the termination of the leave. *See Fifer v. Missouri Division of Employment Security*, 665 S.W.2d 81 (Mo.App.1984); *Division of Employment Security v. Labor and Industrial Relations Commission*, 617 S.W.2d 620 (Mo.App.1981). *Compare Trial v. Industrial Commission*, 540 S.W.2d 179 (Mo.App.1976).

cover the cost of administering the program.

Section 3304(a) directs the Secretary to approve a state's program if he finds that it complies with the "fundamental standards" enumerated therein. Compliance with the standards is voluntary, but all of the states have found the lure of tax credits and grants in return for conforming legislation "an offer that could not be refused." *State of New Hampshire Department of Employment Security v. Marshall*, 616 F.2d 240, 241 (1st Cir.), *appeal dismissed* and *cert. denied*, 499 U.S. 806, 101 S.Ct. 53, 66 L.Ed.2d 10 (1980). Indeed, it is the expressly stated policy of the Missouri Employment Security Law to comply with the federal minimum standards:

> If the Federal Unemployment Tax Act, the Federal Social Security Act or other related federal laws are amended to provide minimum standards for the payment of unemployment benefits, such standards shall become a part of this law to the extent necessary to entitle employers subject to this law to claim the maximum allowable credit against the federal unemployment tax. The provisions of this section shall be implemented by regulation by the division.

§ 288.390, RSMo 1978. Respondent contends such an amendment occurred in 1976 when Congress added a new federal minimum standard providing that "no person shall be· denied compensation under such State law solely on the basis of pregnancy or termination of pregnancy." § 3304(a)(12). The issue to be decided is whether § 3304(a)(12) ·alters the previously existing law to such a degree that, under § 288.390, we must reject the case law construing § 288.050.1(1) which mandates denying unemployment benefits to claimants in respondent's situation.

## II

■ The decision in *Brown v. Porcher*, the only reported case construing § 3304(a)(12), quite properly figured prominently in the opinions rendered by the circuit court and the Western District. Cer-

tain views expressed by the latter court warrant clarification, however. The Western District stated that the courts of this state, when confronted with the task of interpreting a federal statute, are bound to follow the decisions of lower federal courts construing the statute in question. While several decisions of the court of appeals contain similar statements, *see e.g.*, *Buffalow v. Bull*, 619 S.W.2d 913, 919 (Mo.App. 1981); *Haley v. Metropolitan Life Insurance Co.*, 434 S.W.2d 7, 11 (Mo.App.1968); *State ex rel. Atkins v. Missouri State Board of Accountancy*, 351 S.W.2d 483, 485 (Mo.App.1961); *McElvain v. St. Louis & San Francisco Railroad*, 151 Mo.App. 126, 131 S.W. 736, 743 (1910), this Court has never subscribed to such a notion. On the contrary, we have adhered to the view that the courts of this state are bound to follow only our Supreme Court's decisions interpreting the federal Constitution and federal statutes. *See, e.g., S.S. & W., Inc. v. Kansas City*, 515 S.W.2d 487 (Mo.1974); *State v. Moreland*, 351 S.W.2d 33 (Mo. 1961); *Wehrli v. Wabash Railroad Co.*, 315 S.W.2d 765 (Mo.1958) (interpreting the Federal Employers' Liability Act); *Meek v. New York, Chicago & St. Louis Railroad Co.*, 88 S.W.2d 333 (Mo. banc 1935) (interpreting the Federal Safety Appliance Act); *Hardin v. Illinois Central Railroad Co.*, 334 Mo. 1169, 70 S.W.2d 1075 (Mo.1934) (interpreting the Federal Boiler Inspection Act). Although loose language in some opinions indicates that state courts are "bound" by a "federal court's" interpretation of a federal statute, we have discovered no instance in which this Court declined to interpret a federal statute in a particular fashion out of a concern that to do so would run afoul of a lower federal court interpretation of the statute.

■ We do not mean to suggest that a lower federal court's construction of a federal statute is wholly irrelevant. The courts of this state should "look respectfully to such opinions for such aid and guidance as may be found therein." *Hanch v. K.F.C. National Management Co.*, 615 S.W. 28, 33 (Mo. banc 1981). In some circumstances it may be appropriate for a

state court to defer to long established and widely accepted federal court interpretations of federal statutes. But a state court should not hesitate to undertake its own independent assessment of the propriety of a single lower federal court's attempt to construe a statute when the court perceives well-founded deficiencies in that court's analysis.

### III

■■■ The decisions below presume that § 3304(a)(12) has the effect of proscribing this state's long-established practice of disqualifying claimants who leave their employment for reasons attributable to pregnancy. In reaching this conclusion, each court relied heavily on the interpretation of § 3304(a)(12) rendered in *Brown v. Porcher*. The question now facing this Court is whether the text of the statute and its legislative history supports *Brown's* interpretation of § 3304(a)(12).

In *Brown*, a group of claimants who had been denied unemployment compensation in South Carolina brought suit in federal court claiming that South Carolina's policy of denying compensation to women who left their prior employment on account of pregnancy violated § 3304(a)(12).[3] The district court agreed, holding that the statute "imposed a sweeping ban on the use of pregnancy or its termination as an excuse for denying benefits to otherwise eligible women." 502 F.Supp. 946, 955 (D.S.C. 1980). Both the district court and the U.S.

Court of Appeals for the Fourth Circuit, which affirmed the decision on appeal, found the statute "unambiguous" and purported to interpret the plain meaning of the statutory language. Neither court was moved by the argument that the Department of Labor interpreted the statute only to prohibit laws that created a special category for pregnancy-related claims and which denied the claims on the basis of pregnancy alone.[4] The district court noted:

If Congress intended a more limited prohibition or carved out exceptions, it would not have ... use[d] such broad and sweeping language. It would have relied upon more specific language and used appropriately restrictive expressions ... [Section 3304(a)(12)] does not permit denial of benefits ... solely because (1) a woman, for pregnancy-related, medical reasons, voluntarily left work to have a child rather than wait for her employer to fire her, (2) a woman was refused a maternity leave or her leave had no fixed terminal date, or (3) a woman attempted to return to her job either before or after her maternity leave was scheduled to expire. The plain and unambiguous words of the enactment do not contemplate consideration of such irrelevant factors.

*Id.* at 955 (citation and footnotes omitted).

The United States Supreme Court denied certiorari, but Justice White, joined by two other justices, dissented. Justice White ex-

---

**3.** A South Carolina statute disqualified a worker if he had "left voluntarily without good cause his most recent work," S.C.Code Ann. § 41–35–120(1) (1976), and the South Carolina Employment Security Commission, like its Missouri counterpart, interpreted the statute to disqualify eligible claimants who left their most recent work for pregnancy-related reasons.

**4.** The Department of Labor's interpretation of § 3304(a)(12) was clearly set forth in a publication distributed to the states following enactment of § 3304(a)(12):

The new provision requires that the entitlement to benefits of pregnant claimants be determined on the same basis and under the same provisions applicable to all other claimants. It does not mean that pregnant claimants are entitled to benefits without meeting

the requirements of the law for the receipt of benefits. It requires only that a pregnant claimant not be treated differently under the law from any other unemployed individual and that benefits be paid or denied not on the basis of pregnancy but on the basis of whether she meets the statute's conditions for receipt of benefits.

U.S. Department of Labor, Employment and Training Administration, Unemployment Insurance Service, "Draft Language and Commentary to Implement the Unemployment Compensation Amendments of 1976—Public Law 94–566" at 62 (undated). Using this interpretation, the Department of Labor had certified the South Carolina unemployment program as complying with the federal minimum requirements.

pressed misgivings about the lower court's interpretation of § 3304(a)(12):

> It is by no means clear, however, that § 3304(a)(12) does not simply provide that pregnancy must be treated like all other disabilities—that pregnancy simply cannot be singled out for unfavorable treatment. The Department of Labor adheres to such an interpretation and thus disagrees with the Fourth Circuit's interpretation of § 3304(a)(12).

459 U.S. at 1151; 103 S.Ct. at 797 (1983).

We share Justice White's doubts regarding the efficacy of *Brown's* interpretation of § 3304(a)(12). First, the court in *Brown* ignored Congress' use of the qualifying phrase "... *solely* on the basis of pregnancy ..." (emphasis added). Use of the word "solely" indicates that Congress intended to proscribe state laws that denied compensation on the basis of the pregnancy alone. Neither the Missouri statute nor the South Carolina statute challenged in *Brown* make an express reference to pregnancy: in each case compensation was denied because the claimants had left work for reasons that were not attributable to the employer or connected with the work. If Congress had intended to bar disqualification on any ground in cases involving pregnancy, as *Brown* holds, it could have unambiguously expressed its intent without using the word "solely." We are inclined to give greater weight to the Department of Labor's interpretation because it gives effect to every word in the statute.

Second, our examination of the legislative history reveals that Congress deleted language from an earlier draft of § 3304(a)(12) which would expressly have authorized the result reached in *Brown.* As originally proposed by a bill introduced in 1975, § 3304(a)(12) provided:

> No person shall be denied compensation solely on the basis of pregnancy and *determinations under any provision of such State law relating to voluntary termination of employment,* availability for work, active search for work, or refusal to accept work shall not be made in

a manner which discriminates on the basis of pregnancy.

S. 2079, 94th Cong., 1st Sess. § 8(a) (1975); H.R. 8366, 94th Cong., 1st Sess. § 8(a) (1975) (emphasis added), *quoted in* Note, "Denial of Unemployment Benefits to Otherwise Eligible Women on the Basis of Pregnancy: Section 3304(a)(12) of the Federal Unemployment Tax Act," 82 Mich.L. Rev.1925, 1942 (1984). The broad language in the second clause clearly would have required states like Missouri and South Carolina to terminate their practice of disqualifying claimants who left work on account of pregnancy. For reasons that are not revealed in the recorded history, this language was dropped during the pendency of the bill. We believe this act provides persuasive evidence that Congress consciously chose not to create the "sweeping ban" attributed to § 3304(a)(12) by *Brown.* "Few principles of statutory construction are more compelling than the proposition that Congress does not intend *sub silentio* to enact statutory language that it has earlier discarded in favor of other language." *Nachman Corp. v. Pension Benefit Guaranty Corp.,* 446 U.S. 359, 392–93, 100 S.Ct. 1723, 1742, 64 L.Ed.2d 354 (1980) (Stewart, J., dissenting).

Finally, we think this is an appropriate instance in which to defer to the interpretation rendered by the agency Congress entrusted with administration of the statute. The Department of Labor's construction of § 3304(a)(12) comes closer to the plain meaning of the statutory language and is consistent with the legislative history. It is also worthy of note that the Secretary of Labor has continued to certify Missouri's unemployment program during the three and a half years since *Brown* was decided. We believe that it would be incongruous for this Court to inform the Secretary that he had erroneously certified Missouri's eligibility for federal assistance. The Supreme Court's recent decision in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* —— U.S. ——, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), speaks well to the dispute presented to us in this case:

When a challenge to an agency construction of a statutory provision, fairly conceptualized, really centers on the wisdom of the agency's policy, rather than whether it is a reasonable choice within a gap left open by Congress, the challenge must fail. In such a case, federal judges—who have no constituency—have a duty to respect legitimate policy choices made by those who do. The responsibilities for assessing the wisdom of such policy choices and resolving the struggle between competing views of the public interest are not judicial ones: 'Our Constitution vests such responsibilities in the political branches.' *TVA v Hill,* 437 US 153, 195, 57 LEd2d 117, 98 S Ct 2279 (1978).

*Id.* —— U.S. at ——, 104 S.Ct. at 2793, 81 L.Ed.2d at 717. This is no less applicable to state courts.

We are not inclined to disavow the substantial body of case law construing § 288.-050.1(1) to disqualify claimants like respondent on the basis of a single court's questionable construction of a federal statute. It is for the General Assembly or Congress—and not the courts—to decide whether there are, or are not, sound public policy reasons for granting unemployment compensation to women who leave work on account of pregnancy. In the absence of an unequivocal expression of intent by either of those bodies, we shall abide by the existing law.

The judgment is reversed.

HIGGINS, J., concurs.

RENDLEN, C.J., concurs in result.

DONNELLY, J., concurs in result in separate opinion filed.

BLACKMAR, J., dissents in separate opinion filed.

BILLINGS and GUNN, JJ., dissent and concur in separate dissenting opinion of BLACKMAR, J.

DONNELLY, Judge, concurring in result.

Although we may be bound to follow the United States Supreme Court's decisions concerning federal statutes as involving uniquely federal questions, *see Urie v. Thompson,* 337 U.S. 163, 174, 69 S.Ct. 1018, 1026, 93 L.Ed. 1282 (1949), in my view we are not so bound as to its pronouncements regarding the United States Constitution.

This is contrary to the views I expressed in 1972 and 1973. *See Rodgers v. Danforth,* 486 S.W.2d 258, 259 (Mo. banc 1972), and *Kraus v. Board of Education of City of Jennings,* 492 S.W.2d 783, 784 (Mo. 1973). There I mistakenly accepted the assertion in *Cooper v. Aaron,* 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5 (1958), that the United States Supreme Court's interpretations of the written Constitution constitute the "supreme law of the land" under Article VI of the Constitution and are of binding effect on the states. I have since concluded that the *Cooper* assertion is no more than a postulate. *See* A. Bickel, The Morality of Consent 101–102 (1975); L. Tribe, American Constitutional Law 22 (1978); Caine, Judicial Review—Democracy Versus Constitutionality, 56 Temple L.Q. 297 (1983); Donnelly, The State of the Judiciary in Missouri–1982, 3 St. Louis U.Pub.L. Forum 101 (1983). Decisions by the United State Supreme Court in all cases arising under the Constitution should be "binding, in any case, [only] upon the parties to a suit as to the object of that suit * * *." A. Lincoln, First Inaugural Address, March 4, 1861.

I concur only in the result.

BLACKMAR, Judge, dissenting.

The principal opinion correctly expounds the purpose of the federal and state unemployment compensation programs in providing a partial wage replacement for workers left unemployed through no fault of their own. The statute denies eligibility to those who voluntarily quit and those who are discharged for misconduct. I believe that Congress, in the 1976 amendments to the Federal Unemployment Tax Act, had the purpose of extending benefits to a woman who becomes pregnant, leaves work as the

anticipated delivery date appears, and then offers herself for work as soon after giving birth as she is able.

### I.

26 U.S.C. § 3304(a)(12), as enacted in 1976, provides as follows:

No person shall be denied compensation ... solely on the basis of pregnancy or termination of pregnancy.

It is of course assumed that Congress had some purpose in mind in enacting or amending a statute. I cannot see what Congress could have intended in enacting the provision just quoted if it did not intend to guarantee compensation to persons in the position of this claimant. The statute seems as clear to me as it did to the federal court in South Carolina and the United States Court of Appeals for the Fourth Circuit in *Brown v. Porcher,* 502 F.Supp. 946 (D.C.S.C.1980), affirmed 660 F.2d 1001 (4th Cir.1981), *cert. denied* 459 U.S. 1150, 103 S.Ct. 796, 74 L.Ed.2d 1000 (1983), the only reported case on the point.

It is sometimes suggested that the statutory amendment had no purpose beyond that of eliminating state statutory requirements such as the Utah provisions dealt with in *Turner v. Department of Employment Security,* 423 U.S. 44, 96 S.Ct. 249, 46 L.Ed.2d 181 (1975), which established a conclusive presumption that a woman was unavailable for work for a certain time before and after childbirth. This argument is unconvincing. *Turner* ruled in favor of the claimant on the basis of the federal statute, and so there was no imperative need for legislation. The statutory language furthermore, is very broad.

I agree that we are not bound by the decision of a United States Court of Appeals, whether our own Eighth Circuit or another, on a federal question. Those courts, just as ours, are immediately subordinate to the Supreme Court of the United States. We have the authority and the duty to read the law for ourselves, and decisions of coordinate courts do not control us. Decisions of other jurisdictions, however, are helpful and, in this instance, highly persuasive.

The Supreme Court denied certiorari in *Brown v. Porcher, supra.* I am fully mindful of the frequent cautions against reading too much into a denial of certiorari. In this instance, however, the denial is highly persuasive. The case, however, involved a recent statute of national application and a fact situation which constantly recurs. I believe that the Supreme Court would have accepted review if a majority of the justices were of the view that *Brown v. Porcher* was unsound. The presence of the dissenting opinion, rare in denials of certiorari, actually lends force to the denial. Justice White's views, perhaps tentatively stated, simply did not commend themselves to a majority of the Court.

The principal opinion cites the position of the Department of Labor, and the failure to take any action to "disqualify" Missouri's program, in support of its conclusion. I disagree emphatically. Courts, not bureaucrats, give authoritative interpretation of statutes.[1] The statute before us is essentially simple, straightforward, and designed to enunciate a national policy. There may be occasion for deferring to an administrative interpretation if a statute is complicated or if technical knowledge is required, but this is not an appropriate case for deferral.[2] Nor is bureaucratic inertia a

---

**1.** *FTC v. Colgate-Palmolive,* 380 U.S. 374, 85 S.Ct. 1035, 13 L.Ed.2d 904 (1965); *Staley v. Missouri Director of Revenue,* 623 S.W.2d 246 (Mo. banc 1981).

**2.** The Labor Department has not always been of the same view. In 1976 a Labor Department official wrote as follows:

... In our view, a determination disqualifying an individual from benefits when it is found that "her total or partial unemployment is due to pregnancy" ... is as discriminatory as the Utah provision ... which the Court specifical-

ly struck down. Such a provision may mean only that the individual's work separation, *whether a quit or a discharge,* was because she was pregnant. A disqualification on the basis of such a provision would not be based on an individualized determination as to whether or not the individual was able to work, but only on the fact that her unemployment was due to pregnancy. CCH *Unemploy. Ins. Rep.* ¶ 21,842 (1976), U.S. Department of Labor, *Unemployment Insurance Program Letter* No. 1–76. (Emphasis added).

proper circumstance in support of a holding. It may be assumed that the administrators would wait until a question in a pending case is resolved judicially.

Besides, I do not find the Department of Labor's interpretation dispositive of the point at issue. When Justice White's position is adduced, it must be noted that his views are those of a minority. He simply argued in favor of granting review, and pointed to other important issues not involved in this case.

The principal opinion cites legislative history in an attempt to shore up its position. If the statute is clear on its face there is no occasion to refer to legislative history. The language quoted in the principal opinion is from a 1975 bill. A responsible legislature might have felt that the quoted language was prolix and unnecessary, and that, if too many details were covered, omissions might be construed adversely to claimants. The initial bill was modified in the House of Representatives, in which it originated, and so the Senate was not privy to the initial language. There is nothing whatsoever to indicate that Congress intended to deny compensation in the situation presented by this record. It is best to start with the clear language of the statute.

The word "solely" means to the exclusion of all else. As used in the statute, it means that pregnancy cannot be used as a factor in the determination of an award. The Commission automatically classifies a pregnant woman as having voluntarily quit her job when she leaves for confinement and delivery. Pregnancy is, thus, the primary determinant in the denial of benefits. This conflicts with the purpose of the federal statute, regardless of whether state statute law specifically discriminates because of pregnancy. The application of the state statute, not its constitutionality, is being challenged.

## II.

The opinion of the St. Louis Court of Appeals in *Bussmann Manufacturing Co. v. Industrial Commission,* 335 S.W.2d 456 (Mo.App.1960) holding that a woman who leaves work to give birth leaves her work "voluntarily without good cause attributable to [her] work or to [her] employer," and cases following it should be disapproved.[3] It is a perversion of language to say that pregnancy is "voluntary." It is, rather, something which sometimes happens to susceptible women who engage in the necessary preliminaries.

In contrast to the Court of Appeals in *Bussmann,* I believe that disqualification ensues only if the termination of employment is (1) voluntary, and (2) not related to employment. An employee who tenders a permanent resignation of course leaves work voluntarily, but may still receive unemployment compensation if conditions of employment make continued working impossible.[4] It follows that an employee who does not leave voluntarily is not disqualified, even though the circumstances making the termination necessary are not attributable to the employer.

A woman who becomes pregnant has to be absent from work for a time. She has no choice. The necessary period of absence can be computed within reasonably accurate perimeters. It is not necessary to rule against persons in the position of this claimant to protect the unemployment fund against claimants who could continue at their jobs, but choose to leave for their own purposes.

Our Court has never held that people in the claimant's position are ineligible for compensation. The policy of the statute would be best served by departing from the appeals cases cited to support the denial of benefits.

I would affirm the judgment of the circuit court.

**3.** Other pregnancy cases are *Neely v. Industrial Comm. of Missouri,* 379 S.W.2d 201 (Mo.App. 1964), *Davis v. Labor & Industrial Relations Committee,* 554 S.W.2d 541 (Mo.App.1977).

**4.** *See City of Florissant v. Labor & Industrial Relations Committee,* 613 S.W.2d 713 (Mo.App. 1981).