# WIMBERLY *v.* LABOR AND INDUSTRIAL RELATIONS COMMISSION OF MISSOURI

No. 85–129.   Argued December 9, 1986—Decided January 21, 1987

O'CONNOR, J., delivered the opinion of the Court, in which all other Members joined, except BLACKMUN, J., who took no part in the decision of the case.

*Julie S. Levin* argued the cause and filed briefs for petitioner.

*Michael L. Boicourt,* Assistant Attorney General of Missouri, argued the cause for respondents. With him on the brief were *William L. Webster,* Attorney General, and *Sharon A. Willis.*

*Christopher J. Wright* argued the cause and filed a brief for the United States as *amicus curiae* urging affirmance. With him on the brief were *Solicitor General Fried, Assistant Attorney General Willard, Deputy Solicitor General Ayer, John F. Cordes, Marleigh D. Dover, George R. Salem, Allen H. Feldman, Carol A. De Deo, Barbara J. Johnson,* and *Jeffrey A. Hennemuth.* \*

JUSTICE O'CONNOR delivered the opinion of the Court.

The Missouri Supreme Court concluded that the Federal Unemployment Tax Act, 26 U. S. C. § 3304(a)(12), does not prohibit a State from disqualifying unemployment compensation claimants who leave their jobs because of pregnancy, when the State imposes the same disqualification on all claimants who leave their jobs for a reason not causally connected to their work or their employer. 688 S. W. 2d 344 (1985). We granted certiorari, 475 U. S. 1118 (1986), because the court's decision conflicts with that of the Court of Appeals for the Fourth Circuit in *Brown* v. *Porcher,* 660 F. 2d 1001 (1981), cert. denied, 459 U. S. 1150 (1983), on a question of practical significance in the administration of state unemployment compensation laws.

I

In August 1980, after having been employed by the J. C. Penney Company for approximately three years, petitioner requested a leave of absence on account of her pregnancy.

---

*\*Judith E. Kurtz* and *Lorraine L. Loder* filed a brief for Equal Rights Advocates et al. as *amici curiae* urging reversal.

*Joan E. Bertin* and *Isabelle Katz Pinzler* filed a brief for the American Civil Liberties Union et al. as *amici curiae.*

Pursuant to its established policy, the J. C. Penney Company granted petitioner a "leave without guarantee of reinstatement," meaning that petitioner would be rehired only if a position was available when petitioner was ready to return to work. Petitioner's child was born on November 5, 1980. On December 1, 1980, when petitioner notified J. C. Penney that she wished to return to work, she was told that there were no positions open.

Petitioner then filed a claim for unemployment benefits. The claim was denied by the Division of Employment Security (Division) pursuant to Mo. Rev. Stat. § 288.050.1(1) (Supp. 1984), which disqualifies a claimant who "has left his work voluntarily without good cause attributable to his work or to his employer." A deputy for the Division determined that petitioner had "quit because of pregnancy," App. to Pet. for Cert. A53, and therefore had left work "voluntarily and without good cause attributable to [her] work or to [her] employer." *Id.*, at A52. Petitioner appealed the decision to the Division's appeals tribunal, which, after a full evidentiary hearing, entered findings of fact and conclusions of law affirming the deputy's decision. The Labor and Industrial Relations Commission denied petitioner's petition for review.

Petitioner then sought review in the Circuit Court of Jackson County, Missouri. The court concluded that § 288.050.1(1) was inconsistent with 26 U. S. C. § 3304(a)(12) as construed in *Brown* v. *Porcher, supra,* and therefore could not be enforced. Following *Brown,* the Circuit Court held that § 3304(a)(12) "banned the use of pregnancy or its termination as an excuse for denying benefits to otherwise eligible women," App. to Pet. for Cert. A44, and accordingly reversed the Commission's decision and remanded for entry of an award. The Missouri Court of Appeals affirmed. Although the Court of Appeals expressed "reservations concerning the soundness of the ruling in *Brown,*" *id.*, at A39, it

felt constrained to follow the Fourth Circuit's construction of § 3304(a)(12).

The Missouri Supreme Court reversed, with three judges dissenting. The court held that previous state appellate decisions had correctly interpreted Mo. Rev. Stat. § 288.050.1(1) (Supp. 1984) as disqualifying all claimants who, like petitioner, leave work "for reasons that, while perhaps legitimate and necessary from a personal standpoint, were not causally connected to the claimant's work or employer." 688 S. W. 2d, at 346. Rejecting the notion that it was bound by *Brown* v. *Porcher, supra,* the court determined that § 288.050.1(1) was consistent with the federal statute. The court held that the plain language of § 3304(a)(12) only prohibits state laws from singling out pregnancy for unfavorable treatment. The Missouri scheme does not conflict with this requirement, the court found, because the state law does not expressly refer to pregnancy; rather, benefits are denied only when claimants leave work for reasons not attributable to the employer or connected with the work. The court noted that the Department of Labor, the agency charged with enforcing the statute, consistently has viewed § 3304(a)(12) as prohibiting discrimination rather than mandating preferential treatment. We now affirm.

## II

The Federal Unemployment Tax Act (Act), 26 U. S. C. § 3301 *et seq.,* enacted originally as Title IX of the Social Security Act in 1935, 49 Stat. 639, envisions a cooperative federal-state program of benefits to unemployed workers. See *St. Martin Evangelical Lutheran Church* v. *South Dakota,* 451 U. S. 772, 775 (1981). The Act establishes certain minimum federal standards that a State must satisfy in order for a State to participate in the program. See 26 U. S. C. § 3304(a). The standard at issue in this case, § 3304(a)(12), mandates that "no person shall be denied compensation under such State law solely on the basis of pregnancy or termination of pregnancy."

Apart from the minimum standards reflected in § 3304(a), the Act leaves to state discretion the rules governing the administration of unemployment compensation programs. See *Steward Machine Co. v. Davis*, 301 U. S. 548 (1937). State programs, therefore, vary in their treatment of the distribution of unemployment benefits, although all require a claimant to satisfy some version of a three-part test. First, all States require claimants to earn a specified amount of wages or to work a specified number of weeks in covered employment during a 1-year base period in order to be entitled to receive benefits. Second, all States require claimants to be "eligible" for benefits, that is, they must be able to work and available for work. Third, claimants who satisfy these requirements may be "disqualified" for reasons set forth in state law. The most common reasons for disqualification under state unemployment compensation laws are voluntarily leaving the job without good cause, being discharged for misconduct, and refusing suitable work. See Brief for United States as *Amicus Curiae* 2–3; Note, Denial of Unemployment Benefits to Otherwise Eligible Women on the Basis of Pregnancy: Section 3304(a)(12) of the Federal Unemployment Tax Act, 82 Mich. L. Rev. 1925, 1928–1929 (1984).

The treatment of pregnancy-related terminations is a matter of considerable disparity among the States. Most States regard leave on account of pregnancy as a voluntary termination for good cause. Some of these States have specific statutory provisions enumerating pregnancy-motivated termination as good cause for leaving a job, while others, by judicial or administrative decision, treat pregnancy as encompassed within larger categories of good cause such as illness or compelling personal reasons.[1] A few States, however,

---

[1] States with statutory provisions that specifically treat pregnancy as good cause for leaving work include Arkansas, South Dakota, and Tennessee. See Ark. Stat. Ann. § 81–1106(a) (1976 and Supp. 1985); S. D. Codified Laws § 61–6–3 (1978); Tenn. Code Ann. § 50–7–303(a)(1) (Supp. 1986). For an example of a State that has reached the same result by adminis-

like Missouri, have chosen to define "leaving for good cause" narrowly.[2] In these States, all persons who leave their jobs are disqualified from receiving benefits unless they leave for reasons directly attributable to the work or to the employer.

Petitioner does not dispute that the Missouri scheme treats pregnant women the same as all other persons who leave for reasons not causally connected to their work or their employer, including those suffering from other types of temporary disabilities. Tr. of Oral Arg. 8. See *Fifer* v. *Missouri Division of Employment Security*, 665 S. W. 2d 81 (Mo. App. 1984); *Duffy* v. *Labor and Industrial Relations Comm'n*, 556 S. W. 2d 195 (Mo. App. 1977). She contends, however, that § 3304(a)(12) is not simply an antidiscrimination statute, but rather that it mandates preferential treatment for women who leave work because of pregnancy. According to petitioner, § 3304(a)(12) affirmatively requires States to provide unemployment benefits to women who leave work because of pregnancy when they are next available and able to work, regardless of the State's treatment of other similarly situated claimants. See Brief for Petitioner 19–25.

Contrary to petitioner's assertions, the plain import of the language of § 3304(a)(12) is that Congress intended only to prohibit States from singling out pregnancy for unfavorable treatment. The text of the statute provides that compensation shall not be denied under state law "solely on the basis of pregnancy." The focus of this language is on the basis for the State's decision, not the claimant's reason for leaving her job. Thus, a State could not decide to deny benefits to pregnant women while at the same time allowing benefits to persons who are in other respects similarly situated: the "sole basis" for such a decision would be on account of pregnancy.

---

trative determination, see Cal. Admin. Code, Tit. 22, § 1256–15(b), reprinted in 2 CCH Unempl. Ins. Rep. ¶ 5219 O (Apr. 8, 1982).

[2] See, *e. g.*, Okla. Stat., Tit. 40, §§ 2–404, 2–405 (1981); Vt. Stat. Ann., Tit. 21, § 1344(a)(3) (1978 and Supp. 1986).

On the other hand, if a State adopts a neutral rule that incidentally disqualifies pregnant or formerly pregnant claimants as part of a larger group, the neutral application of that rule cannot readily be characterized as a decision made "solely on the basis of pregnancy." For example, under Missouri law, *all* persons who leave work for reasons not causally connected to the work or the employer are disqualified from receiving benefits. To apply this law, it is not necessary to know that petitioner left because of pregnancy: all that is relevant is that she stopped work for a reason bearing no causal connection to her work or her employer. Because the State's decision could have been made without ever knowing that petitioner had been pregnant, pregnancy was not the "sole basis" for the decision under a natural reading of § 3304(a)(12)'s language.

We have, on other occasions, construed language similar to that in § 3304(a)(12) as prohibiting disadvantageous treatment, rather than as mandating preferential treatment. In *Monroe* v. *Standard Oil Co.*, 452 U. S. 549 (1981), for example, the Court considered 38 U. S. C. § 2021(b)(3), a provision of the Vietnam Era Veterans' Readjustment Assistance Act of 1974, which provides that a person "shall not be denied retention in employment . . . because of any obligation" as a member of the Nation's Reserve Forces. The *Monroe* Court concluded that the intent of the provision was to afford reservists "the same treatment afforded their co-workers without military obligations," 452 U. S., at 560; it did not create an "employer responsibility to provide preferential treatment." *Id.*, at 562. Similarly, in *Southeastern Community College* v. *Davis*, 442 U. S. 397 (1979), we considered § 504 of the Rehabilitation Act of 1973, 29 U. S. C. § 794, which provides that an "otherwise qualified handicapped individual" shall not be excluded from a federally funded program "solely by reason of his handicap." We concluded that the statutory language was only intended to "eliminate discrimination against otherwise qualified individuals," and generally did

not mandate "affirmative efforts to overcome the disabilities caused by handicaps." 442 U. S., at 410.

Even petitioner concedes that § 3304(a)(12) does not prohibit States from denying benefits to pregnant or formerly pregnant women who fail to satisfy neutral eligibility requirements such as ability to work and availability for work. See Brief for Petitioner 24. See also S. Rep. No. 94–1265, p. 21 (1976) ("Pregnant individuals would . . . continue to be required to meet generally applicable criteria of availability for work and ability to work"); H. R. Rep. No. 94–755, p. 50 (1975). Nevertheless, she contends that the statute prohibits the application to pregnant women of neutral *disqualification* provisions. Reply Brief for Petitioner 8–9. But the statute's plain language will not support the distinction petitioner attempts to draw. The statute does not extend only to disqualification rules. It applies, by its own terms, to any decision to deny compensation. In both instances, the scope of the statutory mandate is the same: the State cannot single out pregnancy for disadvantageous treatment, but it is not compelled to afford preferential treatment.

The legislative history cited by petitioner does not support her view that § 3304(a)(12) mandates preferential treatment for women on account of pregnancy. Petitioner contends that § 3304(a)(12) as originally drafted was only an antidiscrimination statute, but that the statute in its final form reaches more broadly. The original version of § 3304(a)(12) provided:

> "[N]o person shall be denied compensation under such State law solely on the basis of pregnancy *and determinations under any provision of such State law relating to voluntary termination of employment, availability for work, active search for work, or refusal to accept work shall not be made in a manner which discriminates on the basis of pregnancy*." S. 2079, 94th Cong., 1st Sess., § 8(a) (1975); H. R. 8366, 94th Cong., 1st Sess., § 8(a) (1975) (emphasis added).

According to petitioner, the deletion of the emphasized language, particularly the reference to "discrimination," manifests congressional intent to transform the scope of the statute. But petitioner can point to nothing in the legislative history that would support the view that Congress intended such a dramatic change. It is difficult to see how the deletion of language after the conjunctive "and" could *expand* the scope of the statute, when what was to become the final version of § 3304(a)(12) already was present, essentially in its entirety, in the first clause of the original bill. Indeed, however the first phrase is interpreted—either to ban discrimination or to mandate preference—the additional antidiscrimination language would have been superfluous. We conclude that Congress intended simply to eliminate a lengthy and redundant phrase, without intending to change the meaning of the provision. This explains Congress' silence on the question, without violating either logic or language.

Petitioner's reliance upon other portions of the legislative history also is unavailing. As petitioner notes, the House Report on the bill containing the language now found in § 3304(a)(12) refers to "nineteen states" that had "special disqualification provisions pertaining to pregnancy." H. R. Rep. No. 94–755, at 7. The Report goes on to observe that "[s]everal of these provisions hold pregnant women unable to work and unavailable for work; the remainder disqualify a claimant because she left work on account of her condition or because her unemployment is a result of pregnancy." *Ibid.* Although the Report does not specify which 19 States had "special disqualification provisions pertaining to pregnancy," the parties agree that Congress most probably was referring to the 19 States listed in a program letter issued by the Department of Labor a week before the Committee Report was filed. See Unemployment Insurance Program Letter No. 33–75 (Dec. 8, 1975). In that letter, the agency called for the repeal of state laws which "still include special disqualifications for pregnancy or automatically consider un-

available for work any pregnant claimant." *Id.*, at 2. In an attached summary, the letter discussed the statutory provisions of 19 States relating to pregnancy.

Neither Missouri nor any State with a rule like Missouri's is included in the list of 19 States having special disqualification provisions pertaining to pregnancy. The summary includes only state provisions that disqualify women from receiving unemployment compensation for a defined period around the date of childbirth (the kind of provision at issue in *Turner* v. *Department of Employment Security of Utah*, 423 U. S. 44 (1975)); provisions that specifically disqualify women who leave work because of pregnancy; and miscellaneous provisions that otherwise single out pregnancy for disadvantageous treatment. Petitioner argues that the Department omitted States with neutral disqualification provisions because "their policies were not apparent from their statutes." Brief for Petitioner 24. But Missouri does not have a "policy" specifically relating to pregnancy: it neutrally disqualifies workers who leave their jobs for reasons unrelated to their employment. The focus of the House Report clearly was on "*discriminatory* disqualifications because of pregnancy," H. R. Rep. No. 94–755, at 50 (emphasis added); there is no hint in the House Report of any disagreement with state provisions that neutrally disqualify workers who leave their jobs for reasons unrelated to their employment.

The Senate Report also focuses exclusively on state rules that single out pregnant women for disadvantageous treatment. In *Turner* v. *Department of Employment Security*, *supra*, this Court struck down on due process grounds a Utah statute providing that a woman was disqualified for 12 weeks before the expected date of childbirth and for 6 weeks after childbirth, even if she left work for reasons unrelated to pregnancy. The Senate Report used the provision at issue in *Turner* as representative of the kind of rule that § 3304(a)(12) was intended to prohibit:

"In a number of States, an individual whose unemployment is related to pregnancy is barred from receiving any unemployment benefits. In 1975 the Supreme Court found a *provision of this type* in the Utah unemployment compensation statute to be unconstitutional. . . . A number of other States have similar provisions although most appear to involve somewhat shorter periods of disqualification." S. Rep. No. 94–1265, at 19, 21 (emphasis added).

In short, petitioner can point to nothing in the Committee Reports, or elsewhere in the statute's legislative history, that evidences congressional intent to mandate preferential treatment for women on account of pregnancy. There is no hint that Congress disapproved of, much less intended to prohibit, a neutral rule such as Missouri's. Indeed, the legislative history shows that Congress was focused only on the issue addressed by the plain language of § 3304(a)(12): prohibiting rules that single out pregnant women or formerly pregnant women for disadvantageous treatment.

Finally, the Department of Labor's interpretation of § 3304(a)(12) supports the holding of the Missouri Supreme Court. Shortly after the enactment of § 3304(a)(12), the agency distributed instructions to the States regarding the implementation of its terms. Petitioner emphasizes that the instructions state, in part: "A number of State laws deny benefits for causes related to pregnancy. These provisions are inequitable in that benefits are denied regardless of whether or not the individual is able and available for work and otherwise eligible." United States Department of Labor, Employment and Training Administration, Unemployment Insurance Service, Draft Language and Commentary to Implement the Unemployment Compensation Amendments of 1976—P. L. 94–556, p. 62 (undated 1976). If there is any ambiguity in these sentences, the balance of the communication clearly establishes that the agency viewed § 3304(a)(12) as an antidiscrimination provision:

"The new provision requires that the entitlement to benefits of pregnant claimants be determined on the same basis and under the same provisions applicable to all other claimants. It does not mean that pregnant claimants are entitled to benefits without meeting the requirements of the law for the receipt of benefits. It requires only that a pregnant claimant not be treated differently under the law from any other unemployed individual and that benefits be paid or denied not on the basis of pregnancy but on the basis of whether she meets the statute's conditions for receipt of benefits." *Ibid.*

The agency reiterated this view in a later communication to the States, stating that § 3304(a)(12) "does not speak to treating pregnant claimants more favorably. It only requires that they not be disqualified solely on the basis of pregnancy or its termination." United States Department of Labor, Employment and Training Administration, Unemployment Insurance Service, Supplement No. 1—Questions and Answers Supplementing Draft Language and Commentary to Implement the Unemployment Compensation Amendments of 1976—P. L. 94–566, p. 26 (Dec. 7, 1976). Since then the agency has adhered to the same view. See Brief for United States as *Amicus Curiae* 27–28. Thus, the agency's interpretation of the statute, like its legislative history, confirms what is clear from the statute's plain language: that § 3304(a)(12) prohibits discrimination but does not mandate preferential treatment.

Because § 3304(a)(12) does not require States to afford preferential treatment to women on account of pregnancy, the judgment of the Missouri Supreme Court is affirmed.

*It is so ordered.*

JUSTICE BLACKMUN took no part in the decision of this case.