**Ellen D. BUCHANAN, et al., Plaintiffs,**

v.

**Kristen S. DEMONG, Director of Division of Employment Security, Defendant.**

**Civ. A. No. 82–0067–C.**

United States District Court, D. Massachusetts.

Feb. 20, 1987.

Matthew E. Dwyer, Grady, Dumont & Dwyer, Boston, Mass., for plaintiffs.

E. Michael Sloman, Asst. Atty. Gen., Boston, Mass., Charles E. Walker, Jr., Asst. Atty. Gen., for defendant.

## MEMORANDUM

CAFFREY, Senior District Judge.

This is a civil action in which three individual plaintiffs claim they have been denied unemployment benefits on the basis of their pregnancies by defendant Kristen Demong, Director of the Massachusetts Division of Employment Security. Plaintiffs challenge the defendant's denial of unemployment compensation benefits as violative of 26 U.S.C. § 3304(a)(12) and the due process and equal protection clauses of the Fourteenth Amendment. The matter is now before the Court on cross-motions for summary judgment.

This action was originally commenced as a class action, but now plaintiffs concede that they lack sufficient numerosity under Fed.R.Civ.P. 23(a)(1), and so proceed individually. The parties have filed a statement of agreed facts. The three plaintiffs are all Massachusetts residents who were public school teachers employed by the Boston School Committee. Plaintiff Ellen D. Buchanan was granted an unpaid maternity leave of absence from her teaching position from July 1, 1980 until May 12, 1981. Plaintiff Donna M. Glaser was granted an unpaid maternity leave of absence from November 30, 1978 to August 31, 1981 and beyond. Likewise, plaintiff Judith A. Brennan was granted unpaid maternity leave from January 1, 1979 to August 31, 1981. Thus, the plaintiffs took maternity leaves of 10, 33 and 32 months respectively. The unpaid maternity leaves were granted pursuant to the collective bargaining agreement between the Boston School Committee and the Boston Teachers Union.[1] Plaintiff Buchanan returned to work on May 12, 1981. All three plaintiffs were involuntarily separated from their employment by the School Committee effective September 1, 1981 due to an alleged lack of funds.

After the termination of employment, each plaintiff filed a claim for unemployment compensation benefits. Following separate administrative hearings, each plaintiff was denied benefits on the grounds that each plaintiff lacked sufficient earnings during the statutory "base period" to qualify for eligibility under the state unemployment compensation benefits scheme. The "base period" is the "period of fifty-two consecutive calendar weeks ending with the day immediately preceding the first day of a claimant's benefit year," unless the claimant rceived weekly workmen's compensation benefits during that period, in which case the "base period" is lengthened up to fifty-two weeks, to ac-

---

1. Section 8(g) of the Collective Bargaining Agreement states in relevant part:

(2) Any teacher shall be eligible to use accumulated sick leave for disability caused by pregnancy or childbirth and recovery therefrom ...

(3) Any teacher who is pregnant shall, upon request, be given a maternity leave of absence without pay; provided, that a teacher shall be eligible to use accumulated sick leave for such portion of the maternity leave of absence for which her physician certifies that she was not in fit condition for service due to disability caused by pregnancy or childbirth and recovery therefrom; ...

(6) The teacher, after delivery or if the pregnancy is of shorter duration than expected, may be permitted by the Superintendent to return to work at any time. She shall, however, be permitted to return to work upon notifying, in writing, no less than two weeks in advance of her return, the Superintendant and her principal ...

(7) No maternity leave of absence combined with any sick leave for disability caused by pregnancy or childbirth and recovery therefrom shall exceed eighteen months....

count for the receipt of those benefits. M.G.L. c. 151A, § 1(a). The plaintiffs had earned no wages during their maternity leaves, and consequently, due to the length of the maternity leaves, plaintiff's had insufficient base earnings. Plaintiff Buchanan, having taken a 10 month maternity leave and then returned to work, states that she fell only $37.25 short of the minimum eligibility standard of $1,200 imposed by M.G.L. c. 151A, § 24(a). Plaintiffs commenced this action for declaratory and injunctive relief, arguing that the application of the base earnings requirement to unpaid maternity leaves denies them unemployment compensation on the basis of pregnancy, in violation of 26 U.S.C. § 3304(a)(12) and the due process and equal protection clauses of the Fourteenth Amendment.[2]

## I. *26 U.S.C. § 3304(a)(12)*

The Massachusetts unemployment compensation system, under which the plaintiffs claim benefits, is a joint federal state effort. A compensation fund is set up by pooling required contributions from employers subject to the law. *See generally, The B.F. Goodrich Company v. Director of The Division of Employment Security,* 6 Mass.App. 784, 786–87, 385 N.E.2d 262 (1979). The Commonwealth's unemployment compensation system "is not a social welfare program based on need but is spe-

cifically directed toward a class of unemployed persons who have been and continue to be attached to the labor force." *Keough v. Director of The Division of Employment Security,* 370 Mass. 1, 6, 344 N.E.2d 894 (1976). The administration of the state's unemployment compensation program is funded by federal monies, as prescribed in 42 U.S.C. § 501, et seq., and 26 U.S.C. § 3301, et seq. These federal laws grant operating funds subject to a few minimum federal standards that the state must satisfy. One of these federal standards, set forth in 26 U.S.C. § 3304(a)(12), provides that "no person shall be denied compensation under such State law solely on the basis of pregnancy or termination of pregnancy."

Plaintiffs contend that the application of the state's statutory eligibility criteria, resulting in denial of unemployment benefits, has denied them compensation "solely on the basis of pregnancy." Under the state statutory scheme, eligibility for benefits is contingent on the showing that the claimant has satisfied certain basic conditions.[3] One of these basic conditions is that the claimant must have earned during the base period a minimum of $1,200 or 30 times the average weekly benefit. As explained above, the base period is 52 weeks preceding the first day of the claimant's benefit year.

**2.** The complaint in this action contained an additional state constitutional claim. This Court certified the state law question for a decision by the Supreme Judicial Court pursuant to Rule 1:03 § 1 of the rules of that Court. The issue addressed by the Supreme Judicial Court was whether the base period earnings requirement of M.G.L. c. 151A, § 24, as applied in this case, violated Article 106 of the Amendments to the Massachusetts Constitution, also known as the Equal Rights Amendment. The Supreme Judicial Court held that the base earnings requirement was facially neutral. *Buchanan v. Director of The Division of Employment Security,* 393 Mass. 329, 334, 471 N.E.2d 345 (1984). The Supreme Judicial Court further ruled that the record lacked sufficient factual findings to determine whether the statute was discriminatory as applied. *Id.* at 335, 471 N.E.2d 345.

**3.** M.G.L. c. 151A, § 24 provides in pertinent part:

An individual, in order to be eligible for benefits under this chapter, shall—

(a) Have been paid wages in the base period amounting to at least thirty times the weekly benefit rate, but not less than twelve-hundred dollars ...

(b) Be capable of and available for work and unable to obtain work in his usual occupation of any other occupation for which he is reasonably fitted; and

(c) Have given notice of his unemployment, by registering either in a public employment office or in such other manner, and within such time or times, as the director shall prescribe, and have given notice of the continuance of his unemployment and furnished information concerning any remuneration received by him during the period for which he claims benefits, in accordance with the procedures prescribed by the director.

The defendant denied plaintiffs benefits because they lacked sufficient base period earnings. Plaintiffs argue that they lacked sufficient base period earnings because of the length of their respective unpaid maternity leaves, which, in turn, were due to pregnancy. Thus, plaintiffs conclude, the denial of benefits is due to pregnancy, in violation of § 3304(a)(12). Defendant frames the rationale for the denial of benefits differently, contending that the denial of eligibility of the plaintiffs is not due to the fact of the maternity leave, but simply its length. The length of the maternity leave, defendant maintains, is a completely voluntary arrangement under the collective bargaining agreement between the teachers union and the School Committee. Moreover, defendant argues, the base earnings requirement affects both men and women who take extended leaves of absence without pay and whose positions then are subsequently terminated.

Until recently there were two competing judicial interpretations of § 3304(a)(12). In *Brown v. Porcher,* 660 F.2d 1001 (4th Cir. 1981) the Court of Appeals for the Fourth Circuit read § 3304(a)(12) broadly, ruling that a state could not disqualify a woman from unemployment benefits solely because she left work on account of her pregnancy. *Id.* at 1004. The state policy at issue in that case disqualified women who left work because of pregnancy and, following pregnancy, were capable of returning to work. The court in *Brown* affirmed the decision of the district court, which had noted that "[w]hen a woman returns to the job market after having a child, she and her family can suffer real economic hardship if her employer does not re-hire her and she cannot collect unemployment compensation." 502 F.Supp. 946, 955 (D.S.C.1980), *affirmed,* subject to modification of individual awards, 660 F.2d 1001 (4th Cir.1981). In *Wimberly v. Labor and Industrial Commission of Missouri,* 688 S.W.2d 344 (Mo.1985), however, the Supreme Court of Missouri took a much narrower view of § 3304(a)(12), emphasizing the word "solely" in the statutory language. *Id.* at 349. The Court in *Wimber-*

*ly* rejected the reasoning of *Brown* and upheld the denial of benefits to a woman who left work because of pregnancy. *Id.* at 349, 350. The Court reasoned that the state's denial of benefits on the grounds that the claimant had left work "voluntarily without good cause for reasons not attributable to the employer or connected with the work" was not a denial of benefits "solely on the basis of pregnancy." *Id.*

The United States Supreme Court granted certiorari in *Wimberly,* —— U.S. ——, 106 S.Ct. 1633, 90 L.Ed.2d 179 (1986). In *Wimberly v. Labor and Industrial Relations Commission of Missouri,* —— U.S. ——, 107 S.Ct. 821, 93 L.Ed.2d 909 (1987) the Court noted that the Missouri Supreme Court decision in *Wimberly* conflicted with the Fourth Circuit decision in *Brown. Id.* 107 S.Ct. at ——. The Supreme Court in *Wimberly* affirmed the decision of the Missouri Supreme Court. *Id.* 107 S.Ct. at ——. After careful consideration, it is clear that United States Supreme Court's decision in *Wimberly* is dispositive of the § 3304(a)(12) claim in this present case.

In *Wimberly,* the plaintiff, after having been employed by the J.C. Penny Company for approximately three years, requested and was granted a "leave without guarantee of reinstatement." *Id.,* 107 S.Ct. at 823. Plaintiff took the leave in August 1980, gave birth to her child in November 1980, and on December 1, 1980 notified J.C. Penny that she wished to resume work. J.C. Penny informed plaintiff that there were no positions open for her. Plaintiff filed a claim for unemployment benefits, but was denied because the state statute disqualifies a claimant who "has left his work voluntarily without good cause attributable to his work or to his employer." *Id.* Plaintiff filed suit claiming that she was denied benefits solely due to pregnancy, in violation of § 3304(a)(12). The Missouri Supreme Court concluded that the state disqualification provision did not violate § 3304(a)(12). The United States Supreme Court affirmed. *Id.,* 107 S.Ct. at ——. The Court stated that

"the plain import of the language of § 3304(a)(12) is that Congress intended only to prohibit States from singling out pregnancy for unfavorable treatment. ... The focus of this language [of § 3304(a)(12)] is on the basis for the State's decision, not the claimant's reason for leaving her job. ... [i]f a State adopts a neutral rule that incidentally disqualifies pregnant or formerly pregnant claimants as part of a larger group, the neutral application of that rule cannot readily be characterized as a decision made "solely on the basis of pregnancy." *Id.*, 107 S.Ct. at 825. The Court further explained that § 3304(a)(12) does not require States to afford preferential treatment to women on account of pregnancy. *Id.*, 107 S.Ct. at ——, ——. The Court, turning to the particular Missouri statute at issue, noted that the statute was neutral and applied neutrally. *Id.*, 107 S.Ct. at ——–——. "Because the State's decision could have been made without ever knowing that petitioner had been pregnant, pregnancy was not the 'sole basis' for the decision under a natural reading of § 3304(a)(12)'s language." *Id.*, 107 S.Ct. at 825.

█ In the present case, the base earnings requirement does not single out pregnancy for unfavorable treatment. The base period earnings requirement applies to all claimants and is intertwined with the availability of employer contributions to the fund and its impact on the fiscal integrity of the fund for unemployment benefits. *See B.F. Goodrich*, 6 Mass.App. 784, 786–87, 385 N.E.2d 262; *Keough*, 370 Mass. 1, 6, 344 N.E.2d 894. Plaintiff's pregnancies and length of their maternity leaves puts them with a larger group of other persons—both women and men—who take extended leaves of absence without pay and whose positions are subsequently terminated. Moreover, like the disqualification of the plaintiff in *Wimberly*, the State's disqualification of the plaintiffs in the present case could have been made without even knowing that the plaintiffs had been pregnant. Thus following the reasoning of *Wimberly*, it is clear that plaintiffs have not been denied unemployment benefits "solely on the basis of pregnancy" under § 3304(a)(12). Defendant's motion for summary judgment as to the claims under § 3304(a)(12) should be granted, and plaintiffs' corresponding motion should be denied.

## II. *Fourteenth Amendment*

The plaintiffs also claim that the base earnings requirement violates their substantive due process rights under the Fourteenth Amendment. Plaintiffs argue that the application of the base earnings requirement to them substantially burdens their "fundamental procreational rights," because it impinges upon working women's decision to become pregnant and leave work pursuant to a maternity leave policy. Plaintiffs maintain that defendant cannot demonstrate either a compelling state interest to pass muster under a strict judicial scrutiny standard, nor, under the minimum rationality standard, that the base earnings requirement is rationally related to a legitimate state interest. Plaintiffs' contentions are without merit.

█ It is well settled that procreational decisions are among the personal decisions included in the right of personal privacy protected by the due process clause of the Fourteenth Amendment. *Roe v. Wade*, 410 U.S. 113, 152–53, 93 S.Ct. 705, 726, 35 L.Ed.2d 147 (1973). In the present case, however, the connection between plaintiffs' procreational and privacy rights and the base earnings requirement is so attenuated that it cannot be reasonably said that the base earnings requirement impinges on the exercise of those rights. *See Harris v. McRae*, 448 U.S. 297, 318, 100 S.Ct. 2671, 2688, 65 L.Ed.2d 784 (1980). The defendant, therefore, is not required to show that the base earnings requirement serves a compelling state interest. *See id.* at 326. Instead, the defendant merely must show that the challenged requirement is rationally related to a legitimate state interest. *Id.* As explained above, the base earnings requirement is rationally related to protecting the fiscal integrity of the pool of funds

**144**

available to pay out unemployment benefits. Defendant's motion for summary judgment on the constitutional claims should therefore be allowed, and plaintiffs' corresponding motion should be denied.

Order accordingly.