21 F.3d 366
 Unempl.Ins.Rep. (CCH) P 22,109
Oscar MACIAS; Leonardo Gallegos; Manuel Delgado; Hipolito
Gaona; Jesus Cano; Union De Trabajadores Agricolas
Fronterizos; Jose Angel Ortiz, and all those similarly
situated, Plaintiffs-Appellants, and
Hilario Saucedo, Intervenor,
v.
NEW MEXICO DEPARTMENT OF LABOR; Patrick Baca, in his
official capacity, Defendants-Appellees.
 No. 92-2221.
 United States Court of Appeals,
Tenth Circuit.
 April 6, 1994.
 
 Lawrence Norton II (Nancy L. Simmons of Texas Rural Legal Aid, Inc., with him on the brief), El Paso, TX, for plaintiffs-appellants.
 Jerry A. Walz of Walz, Wallin & Associates, P.C., Albuquerque, NM, for defendants-appellees.
 Before BALDOCK and BRORBY, Circuit Judges, and McWILLIAMS, Senior Circuit Judge.
 McWILLIAMS, Senior Circuit Judge.
 
 
 1
 Oscar Macias and six other persons, all unemployed farm workers, and the Union de Trabajadores Agricolas Fronterizos to which the seven belonged, brought suit in the United States District Court for the District of New Mexico against the New Mexico Department of Labor ("Department"). The gist of the thirty-seven page complaint was that when the individual plaintiffs presented themselves to the Department seeking unemployment benefits, the Department denied them benefits to which, according to the plaintiffs, they were entitled under federal and state law.
 
 
 2
 The complaint set forth three claims for relief: (1) failure of the Department to pay unemployment benefits due them under the Social Security Act, 42 U.S.C. Sec. 503(a)(1) (1988); (2) failure of the Department to require "covered employers" to report wages earned by the individual plaintiffs and pay unemployment compensation taxes thereon as required by the Federal Unemployment Tax Act ("FUTA"), 26 U.S.C. Sec. 3301, and also as required by local New Mexico statute; and (3) a claim by plaintiffs based on 42 U.S.C. Sec. 1983 (1988).
 
 
 3
 The plaintiffs and the Department settled the first and third claims. As to the second claim, after extensive discovery, both sides moved for summary judgment. After hearing, the district court denied plaintiffs' motion and granted the Department's motion and entered judgment dismissing the plaintiffs' action. Plaintiffs appeal. We affirm.
 
 
 4
 As indicated, the individual plaintiffs, who will hereinafter be referred to as "the plaintiffs," are seven farm workers working and living in New Mexico and West Texas. The plaintiffs were recruited on a day-haul basis by so-called "crew leaders" to perform agricultural labor for New Mexico farm operators. Typically, a crew leader recruits workers, picks up the workers at a designated pick-up site, transports them to the work site, where, in our case, the plaintiffs picked chiles and harvested onions by hand, with the crew leader then transporting the workers back to the pick-up site at the completion of the day's work or a particular job. This routine is repeated over and over during the growing and harvesting season.
 
 
 5
 FUTA requires the employer of farm workers such as these plaintiffs to report wages paid and pay to the federal government a tax on the wages paid. 26 U.S.C. Sec. 3301 (1988). However, the FUTA also provides that if a state adopts its own unemployment compensation benefit plan which is thereafter certified by the federal government, and the plan also requires that wages paid farm laborers be reported to the state and a tax paid thereon by "covered employers," then taxes thus paid the state are a credit on taxes due the federal government up to 90% thereof. 26 U.S.C. Secs. 3302, 3304 (1988). New Mexico has adopted the New Mexico Unemployment Compensation Law ("New Mexico Act"), a comprehensive unemployment insurance benefit plan which has been approved by the federal government. N.M.Stat.Ann. Secs. 51-1-1 to 51-1-58 (Michie 1993 Repl.).
 
 
 6
 The particular disagreement between the plaintiffs and the Department is whether the crew leader or the farm operator is the "covered employer" of the plaintiffs and, as such, required to report wages and pay taxes. What triggered the instant proceeding is that in our case neither the crew leader nor the farm operators where the plaintiffs performed agricultural work reported the wages paid to either the federal or state officials, and no tax was paid thereon to either. It was on this basis that the Department determined that the plaintiffs were not eligible for unemployment compensation benefits and denied their applications therefor, resulting in the present litigation.
 
 
 7
 The plaintiffs alleged in the second claim of their complaint that the Department had failed to require "covered employers" to report wages earned by the plaintiffs, and to pay taxes thereon, in violation of FUTA and the New Mexico Act. In this regard, the plaintiffs alleged that the farm operators were the "covered employers" of such persons as the present plaintiffs and that it was their duty, under both the FUTA and the New Mexico Act, to report wages paid and remit the tax thereon, whereas the Department's policy was to look solely to the "crew leaders" to report the wages and pay the tax.
 
 
 8
 The district court held that FUTA did not require New Mexico to "mirror" FUTA in its treatment of agricultural labor and then went on to hold that the Department was correctly interpreting and administering the New Mexico Act in its determination of just who was the "covered employer" for migrant farm labor.[1] In this regard, the federal district court held that it was proper for the Department in determining who was the "covered employer" for farm workers to "look first" to the crew leader of the workers, assuming he was registered with the federal authorities, for reporting the wages paid such workers and paying a tax thereon.
 
 
 9
 On appeal, the plaintiffs concede that we are not here concerned, as such, with the provisions of FUTA, but they do urge that the district court erred in concluding that the Department was correctly interpreting and administering the New Mexico Act. So it boils down to this: The federal courts are called upon to determine whether an administrative agency of the State of New Mexico is properly interpreting a New Mexico statute. The plaintiffs argue here that the Department turned the New Mexico Act "on its head," and that the Department should have "looked first" to the farm operator--not the crew leader.[2] In their second claim for relief, the plaintiffs sought declaratory judgment and injunctive relief compelling the Department to thus interpret and administer the New Mexico Act. This the district court declined to do, holding that the Department had correctly interpreted, and administered, the New Mexico Act.
 
 
 10
 In arguing that the Department in its determination of who is a "covered employer" should "look first" to the farm operators, plaintiffs rely on the so-called "abc" provisions of the New Mexico Act. N.M.Stat.Ann. Secs. 51-1-1, et seq. Section 51-1-42(F)(5) of that Act provides as follows:
 
 F. "employment" means:
 
 11
 ....
 
 
 12
 (5) services performed by an individual for an employer for wages or other remuneration unless and until it is established by a preponderance of evidence that:
 
 
 13
 (a) such individual has been and will continue to be free from control or direction over the performance of such services both under his contract of service and in fact;
 
 
 14
 (b) such service is either outside the usual course of business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and
 
 
 15
 (c) such individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the contract of service;
 
 
 16
 It is the plaintiffs' contention that under the aforesaid statute the farm operator is the "covered employer" of migrant farm workers such as the plaintiffs, and as such must report wages paid and pay a tax thereon, unless, in a given case, the farm operator can establish by a preponderance of the evidence that he meets the so-called "abc" test, in which event he would not be the "covered employer," and that only in that event should the Department look to the "crew leader" as the "covered employer" of farm laborers.
 
 
 17
 The Department's position is that the "abc" test is to simply determine whether a given person is truly an employee of the farm operator or is an independent contractor performing services for the farm operator and that the more applicable statutory language bearing on the present problem is N.M.Stat.Ann. Sec. 51-1-42(F)(6)(c). That section provides as follows:
 
 F. "employment" means
 
 18
 (6) service performed after December 31, 1977 by an individual in agricultural labor as defined in Subsection Q of this section if:
 
 
 19
 ....
 
 
 20
 (c) for purposes of this paragraph, any individual who is a member of a crew furnished by a crew leader to perform service in agricultural labor for a farm operator or other person shall be treated as an employee of such crew leader, 1) if such crew leader meets the requirements of a crew leader as defined in Subsection L of this section, or 2) substantially all the members of such crew operate or maintain mechanized agricultural equipment which is provided by the crew leader, and 3) the individuals performing such services are not, by written agreement or in fact, within the meaning of Paragraph (5) [the "abc" test] of this subsection, performing services in employment for the farm operator or other person;
 
 
 21
 As indicated, in the instant case the federal courts, by way of a pendent claim, are being called on to review a state administrative body's interpretation and application of a state statute. We have repeatedly held that "considerable deference" should be given by a federal court to a federal administrative agency's interpretation and application of a federal statute which it is charged with administering. See, e.g., Downtown Medical Ctr./Comprehensive Health Care Clinic v. Bowen, 944 F.2d 756, 768 (10th Cir.1991) ("an administrative interpretation is ordinarily entitled to considerable deference"); Davis v. Director, OWCP, U.S. Dept. of Labor, 936 F.2d 1111, 1115 (10th Cir.1991) ("We must give considerable weight to an agency's construction of the statutory sections it is entrusted to administer."); Bernstein v. Sullivan, 914 F.2d 1395, 1400 (10th Cir.1990); Chapman v. United States Dep't of Health & Human Services, 821 F.2d 523, 527 (10th Cir.1987). There is perhaps even more compelling reason for a federal court to give deference to a state administrative agency's interpretation and application of a state statute which it is charged with administering.[3] In this connection, New Mexico courts have held that although not binding, the interpretation of a state statute by a state agency charged with the administration of a statute is persuasive and should not be overturned unless "clearly incorrect." New Mexico Pharmaceutical Ass'n v. State of New Mexico, 106 N.M. 73, 738 P.2d 1318, 1320 (1987); Muckey v. New Mexico Dep't of Human Services, 102 N.M. 265, 694 P.2d 521, 526 (Ct.App.1985).
 
 
 22
 We do not believe that the Department's interpretation or application of the New Mexico Act is "clearly incorrect" and on that basis we affirm. Certainly, the Department's interpretation and application of N.M.Stat.Ann. Secs. 51-1-42(F)(5) and (6)(c) is both reasonable and plausible. In such circumstance a federal court should be slow to overturn the agency's interpretation and application thereof.
 
 
 23
 Judgment affirmed.
 
 
 
 [1]
 A state's unemployment compensation plan need not mirror the FUTA in all respects. States must follow only those aspects of the FUTA that are required for certification. 26 U.S.C. Sec. 3304(a) (1988). As a result, states can vary their program in other respects. Wimberly v. Labor & Indus. Relations Comm'n of Missouri, 479 U.S. 511, 515, 107 S.Ct. 821, 824, 93 L.Ed.2d 909 (1987)
 
 
 [2]
 Plaintiffs suggest that crew leaders because of their mobility have traditionally failed to report wages and pay taxes thereon, whereas the farm operator is more easily identified and located
 
 
 [3]
 "A presumption of validity attaches to the agency action ... The same presumption of validity applies to a state agency as to a federal agency." Colorado Health Care Ass'n v. Colorado Department of Social Services, 842 F.2d 1158, 1164 (10th Cir.1988) (citing Mary Washington Hosp., Inc. v. Fisher, 635 F.Supp. 891, 897 (E.D.Va.1985)). See also, Lincoln Bank & Trust Co. v. Exchange Nat'l Bank & Trust Co., 383 F.2d 694, 698 (10th Cir.1967), (the consistent and continued construction of an ambiguous state statute by state administrative officers is entitled to great weight and "will not ordinarily be overturned by a contrary judicial interpretation")